UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONYA KNIGHT,

                 Plaintiff,

                                  Case No. 12-cv-12129
v.                                 Honorable Mark A. Goldsmith
                                  Magistrate Judge David R. Grand

WELLS FARGO,

                 Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART AND
DENY IN PART DEFENDANT'S MOTION TO DISMISS [3]
AND TO GRANT IN PART AND DENY IN PART PLAINTIFF'S
MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT [13]**

## I.   RECOMMENDATION

Before the court are defendant Wells Fargo's Motion to Dismiss [3] and plaintiff Tonya

Knight's Motion for Leave to File a First Amended Complaint [13], which were referred to this

court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  [4].  For the

following reasons, the court RECOMMENDS that defendant's motion [3] be GRANTED IN

PART AND DENIED IN PART, and that plaintiff's motion [13] be GRANTED IN PART AND

DENIED IN PART.  More specifically, the court RECOMMENDS that plaintiff's Motion for

Leave to File a First Amended Complaint be GRANTED as to Count Three (fraud), and

DENIED as to Counts One (trespass) and Two (breach of contract).  The court further

RECOMMENDS GRANTING defendant's Motion to Dismiss as to Counts One (trespass) and

Two (breach of contract) of Knight's Complaint, and DENYING that motion as moot as to

Count Three (fraud).

## II.     REPORT

### A.     FACTUAL BACKGROUND

#### 1.     Knight/Wells Fargo Mortgage Relationship

This case arises out of the mortgage relationship between plaintiff mortgagor Tonya Knight and defendant mortgagee Wells Fargo.  (Doc. #3-4).  Knight is the owner of a rental property at 14818 Washburn St. in Detroit, Michigan (the "Property"), upon which Wells Fargo held a mortgage pursuant to a 2004 re-finance transaction (the "Mortgage").  (*Id.*; Cplt. ¶23; Ex. C p. 2).  Most relevant to this matter are the following provisions in the Mortgage:

> **5.     Property Insurance.**  * * * * In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender….**Unless Lender and Borrower otherwise agree in writing, any insurance proceeds [] shall be applied to restoration or repair of the Property**, if the restoration or repair is economically feasible and Lender's security is not lessened…Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument…
>
> * * * *
>
> **7.     Preservation, Maintenance and Protection of the Property; Inspections.**  * * * * Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.   Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed....
>
> * * * *
>
> **9.     Protection of Lender's Interest in the Property and Rights Under this Security Instrument**.  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument … or (c) Borrower has abandoned the property, then Lender may do and pay for

2

> whatever is reasonable and appropriate to protect Lender's interest in the
> Property and rights under this Security Instrument, including protecting
> and/or assessing the value of the Property, and securing and/or repairing
> the Property . . . Securing the property includes, but is not limited to,
> entering the Property to . . . change locks . . . It is agreed that Lender
> incurs no liability for not taking any or all actions authorized under this
> Section 9.

(Mortgage ¶¶5, 7, 9) (emphasis added).  In her initial complaint, Knight admits that she stopped

paying her mortgage in June of 2010.  (Doc. #1-1 at 29) ("as a result of lack of funds . . . [i]n

June 2010 I have become unable to make payments on this Mortgage.").

### 2. Knight's Property Suffers a Fire and She Receives Insurance Proceeds

Knight alleges that on August 11, 2010, her tenants caused a fire to the Property,

rendering it unlivable.  (Cplt. ¶6).  On September 20, 2010, Knight signed work authorization

forms to enable a contractor to repair the Property, and she submitted the contractor's

information to Wells Fargo.  (*Id.* ¶7).  On October 15, 2010, Wells Fargo agents entered the

Property and changed the locks without Knight's knowledge or permission.  (*Id.* ¶¶8, 19).

Knight alleges that at that time, there was no pending foreclosure sale, and that the Property was

not abandoned.  (*Id.* ¶¶21-22).  On October 18, 2010, Knight reentered the Property with the

assistance of a locksmith and changed the locks so she would have continued access.  (*Id.* ¶20).

On November 2, 2010, Knight's insurance company sent her a check, payable to her and

Wells Fargo jointly, for the fire damage in the amount of $62,905.46.  (*Id.* ¶8).  It appears that at

the time, Knight owed approximately $40,500 on her Mortgage loan.  (*Id.* ¶14).  On November

22, 2010, Knight called Wells Fargo to get a clearer understanding about her options for

repairing the Property.  (*Id.* ¶9).  Knight alleges in her initial complaint that "Wells Fargo stated

to [her] that written authorization must be received by Wells from [her] in order to work with

any other outside party during the claim process."  (*Id.* ¶11).[1]

### 3. Wells Fargo Sends Knight the November 22, 2010 Fax

Knight claims that after the call, Wells Fargo faxed her 8 pages of paperwork (hereinafter "the November 22 Fax" or the "Fax") which she alleges was "not presented [] in any particular order."  (*Id.*  ¶¶9-10).[2]

Page 1 of the Fax is the cover page.  Page 2 is a November 22, 2010 letter from Wells Fargo to Knight, acknowledging her recent notification of the fire damage.  (*Id.* at 2).  The letter outlines the procedures necessary to complete the repairs and explains the process for disposition of funds.  (*Id.*).  It states that, "[i]n most instances, the funds will be disbursed to you in 1/3 increments to cover the cost of repairs as they are completed," subject to periodic inspections to ensure the work is being completed properly.  (*Id.*).  The letter then states, "**The following pages will provide the instructions and forms that we need signed and returned to us** along with the check containing all necessary endorsements."  (*Id.*) (emphasis added).  The letter goes on to state, "If your insurance check exceeds your current outstanding balance, you have the option to

---

[1] In her proposed amended complaint, Knight makes more specific allegations about Wells Fargo's instructions.  She claims: "On November 22, 2010, an agent of Wells Fargo[ ] specified that Plaintiff must endorse the last signature page [in a fax that Wells Fargo would be sending to her], in order to authorize disbursement of the insurance claim funds…"  (Doc. #24, Proposed Amended Cplt., *e.g.*, ¶¶48, 58).  *See also infra*, fn. 4, fn. 15.

[2] At the hearing and in her briefs, Knight alleges that the order in which she presents the pages of the November 22 Fax to the court (Cplt. Ex. B) is the order in which she received them.  However, Wells Fargo also attached a copy of these same eight pages to its motion to dismiss (Doc. #3-2), and, unlike Knight's copy of the Fax, Wells Fargo's copy includes the facsimile transmittal line at the bottom of each page which shows the actual order in which it faxed the pages to Knight.  (Doc. #3-2).  The transmittal lines also show that the total number of pages faxed was actually twelve, not eight, a fact Knight admits in her proposed amended complaint.  The court can only wonder about the contents of the missing four pages, as neither party provided a copy of them to the court.  Neither party could explain at the hearing why those pages were missing, nor identify their contents.  For ease of reference, the court will discuss the Fax in the order in which the pages are numbered per the transmittal line.

pay off the loan.  Please submit your written request to pay off your loan along with the fully endorsed check to us."  (*Id.*).  At the bottom of the page is an unexplained file name "LD715/B06/1" and underneath that, the term "Enclosures."  (*Id.*).

Page 3 of the Fax instructed Knight to "take a few moments to review this letter and the enclosed forms as they are important to the timely processing of your claim.  These guidelines have been created to help protect both you and Wells Fargo Home Mortgage **during the repair process**."  (*Id.*) (emphasis added).  It then lists the items needed for "timely processing of your claim."  (*Id.* at 3).  They include:

- Fully endorsed claim check from your insurance carrier identified with your mortgage loan number…

- Insurance Adjustor Worksheet or contractor's estimate itemizing damages…

- Signed contract(s) for repairs from each contractor working on your home…

- Federal Tax Identification form (W-9)…

- Certification of Completion form signed by all mortgagors when work is complete

- Current home and work phone number for customer.  Written authorization must be received to work with any other party during the claim process

- General Information Form[3]

(*Id.*).  There is a file name at the bottom of this page as well, "LD715/B06/2/OS1."  (*Id.*).

Page 4 of the Fax states, in pertinent part, that to receive the first release of payment, "Wells Fargo Home Mortgage must receive all of the above items, except the Certificate of Completion, before processing continues.  **When the items have been received, a check equal**

---

[3] The court will refer to these materials as the required "Repair Documentation."

**to one-third of the claim check(s) received by our office will be issued to you and your contractors.**" (*Id.* at 4) (emphasis added).  It goes on to discuss the steps for the second and final release of funds. (*Id.*).  It then has a section entitled "Important Notes," which includes the note that "If your loan is past due, these guidelines may change." (*Id.*).  At the bottom of this page appears a file name "LD716/B06/1." (*Id.*).

Page 5 of the Fax is missing. (*Id.*).  Page 6 is a certification of completion of repairs, which includes a signature line for "Tonya Knight." (*Id.*).  The file name for this page is "LD717/B06/1." (*Id.*).  Pages 7 and 8 of the Fax are missing. (*Id.*).

Page 9 is another November 22, 2010 letter from Wells Fargo, stating that "Wells Fargo Home Mortgage has been advised that you wish to payoff [sic] the loan for the above-referenced property with the settlement check(s) from the insurance proceeds." (*Id.*).  It then states:

> By signing ***the attached***, you acknowledge and consent to the following:
>
> 1.    You authorize Wells Fargo Home Mortgage to negotiate the endorsed settlement check(s), which you will submit ***with this executed attachment***.
>
> 2.    Wells Fargo Home Mortgage requires a minimum of at least fifteen (15) calendar days to refund any remaining funds, if applicable, from the date of receipt of the settlement check(s).
>
> 3.    There is no cancellation or retraction of the authorization to payoff [sic] the loan from the insurance proceeds at a subsequent date.
>
> 4.    You, as mortgagee, are responsible for payment of any outstanding repair bills or supplies.
>
> 5.    Per diem interest will continue to accrue until ***this executed letter*** is returned and received by Wells Fargo Home Mortgage.

(*Id.*) (emphasis added).  The letter requests that Knight "[p]lease send the endorsed settlement check(s) and ***this executed letter***" to Wells Fargo. (*Id.*) (emphasis added).  At the bottom of the letter, the word "Enclosures" appears under a file name "LD423/B06/1." (*Id.*).  The court will

refer to this page as the "LD 423 Letter."

The next page is page 10 of the Fax.  (*Id.*).  This page contains only a loan number, Knight's name, and the following statement:  "I/We, the above-listed borrower(s), acknowledge and agree to comply with all the terms as listed in this notice."  (*Id.*).  This is followed by two blank borrower signature lines and lines for dates.  (*Id.*).  Below them is the file name "LD423/B06/2/OS1."  (*Id.*).  The court will refer to this page as the "LD 423 Signature Page".[4]

Page 11 is yet another November 22, 2010 letter from Wells Fargo, which states (incorrectly) that Wells Fargo had already received the insurance check and was holding it in a special escrow account.  (*Id.*).  The letter then states: "[d]ue to the status of your loan [presumably in default for non-payment], in order for us to continue to process your claim, please select one of the following options:

> 1.    Bring your mortgage account current and if the insurance claim check amount does not exceed $15,000.00, please contact the Property Loss department in order for the funds held in the special escrow account to be released to you for use towards repairs of the property.  Please note: If the check amount exceeds $15,000.00, please refer to the enclosed claim package for further information.
>
> 2.    You may select a contractor to complete the repairs.  Payment will be issued payable jointly to you and your contractor for completion of the repairs.  The claim will be processed based on the enclosed guidelines.
>
> 3.    You may use personal funds to make repairs and provide a letter of authorization to apply claim funds to your monthly mortgage payments.  If

---

[4] Initially, Knight claimed that there was a page missing in between the LD 423 Letter and Signature Page.  (Doc. #20 at 3) (alleging that the LD 423 Letter and Signature Page were "not connected").  After carefully inspecting the transmittal lines, however, that is simply not the case; the LD 423 Letter is clearly page 9 of the Fax and the LD 423 Signature Page is clearly page 10.  (Doc. #3-2 at 6-7).  At the hearing, Knight unequivocally agreed with this.  Also at the hearing, Knight clarified her allegations (*e.g.*, Proposed Amended Cplt., ¶¶48, 58) about her conversations with the Wells Fargo agent that precipitated it sending her the Fax; liberally construing her allegations, Knight claims that the Wells Fargo agent instructed her to sign the "last signature page" of the fax (which turned out to be the LD 423 Signature Page) in order for it to begin the process of distributing the insurance proceeds for repair purposes.  *Infra*, fn. 15.

> this option is selected, Wells Fargo Home Mortgage will need to receive all documents listed in the enclosed package along with verifiable paid receipts for all necessary material and labor. After our 100 percent inspection has been completed, the claim funds will be applied toward the balance due on the loan.  If funds remain after the loan is contractually current, they will be released to you."

(*Id.*).  The file name at the bottom of this page is "LD424/B06/1."  (*Id.*).  Page 12 of the Fax bears a heading indicating it is "Page 2" of this same letter, and it notes that the requirements and forms for review are enclosed in the November 22 Fax.  (*Id.*).  The file name at the bottom of this page is "LD424/B06/2/OS1."  (*Id.*).[5]

#### 4.      The Parties' Post-Fax Conduct

Knight claims that after receiving the Fax, she submitted all of the required Repair Documentation and the signed LD 423 Signature Page (but not the LD423 Letter) to Wells Fargo so that it could work with her insurance adjusters and contractors during the repair process. (Proposed Amended Cplt. ¶¶38, 43).  She attached those materials (other than her contractor's W-9 form) as Exhibit E to her Proposed Amended Complaint.  Knight claims that the only reason she included the LD 423 Signature Page with the Repair Documentation "was to provide written authorization as specified by Wells Fargo's agent and [Page 3 of the Fax]."  *See supra* fn. 1, fn. 4.  (*Id.* ¶44, 48, 58; Cplt. ¶11).

Subsequently, Knight and her contractor contacted Wells Fargo several times to advise it of the repairs' progress and to determine when she would receive the first of the repair funds. (Cplt. ¶12).  However, on February 7, 2011, Knight received: (1) a notice from Wells Fargo that it had paid her Mortgage loan in full from the insurance proceeds; and (2) a check in the amount of $22,406.36, which was the money left over after her loan was paid off.  (*Id.* ¶¶13-14; Ex. B at

---

[5] Unlike the second page of this letter which is enumerated as "Page 2" by both its heading and file name, the LD 423 Signature Page is enumerated only by its file name – that is, it bears no heading indicating it is "Page 2" of some multi-page document.

10).[6]

On February 14, 2011, Knight wrote to Wells Fargo to inquire why it used the insurance proceeds to pay off her note rather than for the repairs as she believed she had requested.  (*Id.* ¶16; Ex. D).  Wells Fargo wrote back stating: "When you signed and dated the LD 423 letter requesting that we use the claim funds in restricted escrow to payoff [sic] your loan, we did so…Protecting the structural integrity of your home is our number one priority…We appreciate your diligence during this repair process."  (*Id.* Ex. E).  Knight alleges that Wells Fargo, at the time it used her proceeds to pay off her loan, knew that she had intended to use the money for repairs.  (*Id.* ¶32).

### B.    PROCEDURAL BACKGROUND

On April 12, 2012, Knight filed a complaint against Wells Fargo in Wayne County Circuit Court, which was subsequently removed to this court based on diversity jurisdiction [1]. In her complaint, Knight asserts three state law causes of action.  First, she claims that Wells Fargo's entrance onto the Property and changing of the locks constituted an actionable trespass. Second, Knight alleges that a contract existed between herself and Wells Fargo that required Wells Fargo to distribute the insurance proceeds in three payments for repairs on the house, and that Wells Fargo breached this contract when it used those funds to pay off her Mortgage loan. Finally, she alleges that Wells Fargo fraudulently instructed her to sign the LD 423 Signature Page in order for it to disburse the insurance funds for purposes of repairing the Property knowing it would treat her submission of that Signature Page as a request to apply those funds to her Mortgage loan balance.

---

[6] Although not specifically mentioned in her complaint, Knight attached documentation showing that she first received notice that her loan had been pain in full from her insurance proceeds by letter dated January 19, 2011.  (Cplt. Ex. C at 6).

Wells Fargo moves to dismiss the complaint.  (Doc. #3).  It argues that Knight cannot state a claim for trespass because, under the terms of the Mortgage, which Wells Fargo attaches as an exhibit to its motion,[7] it had the right to enter the Property and secure it by changing the locks without Knight's permission because she had stopped making mortgage payments in June 2010.  Wells Fargo argues that Knight's breach of contract claim must fail because there was no contract between itself and her regarding disbursal of funds to repair the property, and the only contract was to pay off the Mortgage loan, evidenced by her signature on the LD 423 Signature Page.  Finally, Wells Fargo argues that Knight failed to plead her fraud claim with the level of specificity required by Federal Rule of Civil Procedure 9(b).  In addition to responding to Wells Fargo's motion, Knight filed a motion to amend her complaint, and a proposed amended complaint.  (Doc. #13, 24).

## C.   APPLICABLE LEGAL STANDARDS

### 1.   Motion to Dismiss

A motion to dismiss pursuant to Fed. R. of Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*quoting*

---

[7] A document not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings when the "document is referred to in the complaint and is central to the plaintiff's claim[.]"  *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (internal quotes and citation omitted). "[I]f the plaintiff fails to attach the written instrument upon which [s]he relies, the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F.Supp.2d 718, 721 (E.D. Mich. 2003). Accordingly, the mortgage and note attached to Wells Fargo's motion are considered part of the pleadings, and the court's consideration of these documents does not convert the motion to dismiss into one for summary judgment.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (*citing Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Williams v. Richland County Children Servs.*, 2012 WL 2874041 at *3 (6th Cir. Jul. 13, 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476) (6th Cir. 2007).  *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  That tenet, however, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 129 S.Ct. at 1949.  *See also*, *Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 Fed. Appx. 49, 51 (6th Cir. 2009).  Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading."  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 129 S.Ct. at 1949.

11

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir.2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011). Furthermore, even in a *pro se* complaint, allegations of fraud must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b). *Bundy v. Fannie Mae*, No. 10-12678, 2011 U.S. Dist. LEXIS 27562, *19-20 (E.D. Mich. Feb. 25, 2011). "Components such as time, place, and the contents of the fraud are critical to a finding of sufficient particularity." *Id.* (citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)).

### 2.    Motion to Amend

Subsequent to the filing of Wells Fargo's motion to dismiss, but beyond the 21-day period in which she could have amended by right, Fed. R. Civ. P. 15(a)(1)(B), Knight filed a motion to amend her complaint, seeking to add additional facts and allegations. Wells Fargo responds that any attempt by Knight to amend her complaint would be futile as her claims, even as amended, could not withstand a motion to dismiss. Pursuant to Federal Rule of Civil Procedure 15(a)(2), a party may amend its complaint by leave of the court, and leave to amend "shall be freely given when justice so requires." Rule 15 sets forth "a liberal policy of permitting amendments to ensure the determination of claims on their merits." *Oleson v. United States*, 27 Fed. Appx. 566, 569 (6th Cir. 2001) (internal quotations omitted). Leave to amend should only be denied where "the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Carson v. U.S. Office of Special*

*Counsel*, 633 F.3d 487, 495 (6th Cir. 2011).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't. of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993).

    D.    **ANALYSIS**

        1.    **Trespass**

Count One of the complaint alleges trespass.  Under Michigan law, "[a] trespass is an unauthorized invasion upon the private property of another."  *Am. Transmission, Inc. v. Channel 7 of Detroit, Inc.*, 609 N.W. 2d 607, 613 (Mich. Ct. App. 2000).  However, "consent is an affirmative defense to a claim of trespass."  *Id.*  Here, Knight alleges that Wells Fargo trespassed on her Property when it entered without her permission and changed the locks, because she alleges that she retained exclusive rights to the Property during this time and the Property was not then subject to a "foreclosure sale," nor "abandoned."  Although not clearly stated in her complaint, Knight is presumably alleging that any right Wells Fargo had to enter the house was pursuant to paragraph 7 of the Mortgage, which governs preservation and repairs on the Property, and which states "Lender or its agent may make reasonable entries upon and inspections of the Property . . . Lender shall give Borrower notice at the time of or prior to such an interior inspection . . ."  (Def. Mot. Ex. 3, Mortgage ¶7).

However, Wells Fargo argues that its right to enter and secure the Property arose not under paragraph 7 of the Mortgage, but under paragraph 9 which provides, in relevant part:

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument … *or* (c) Borrower has abandoned the property, then Lender may do and pay for whatever is reasonable and appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property . . . Securing the

13

> property includes, but is not limited to, entering the Property to . . . change locks . . . It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

(*Id.* ¶9) (emphasis added). Unlike paragraph 7, nothing in paragraph 9 requires Wells Fargo to provide notice prior to entry. Knight's brief and her hearing argument focus on the fact that the Property was not in foreclosure at the time Wells Fargo entered, and that she had not "abandoned" the house at the time. She also claims that she had never been notified of being in default, or given the opportunity for redemption, as required by other provisions in the mortgage.

Knight's arguments are misplaced. Satisfying any *one* of the applicable paragraph 9 conditions would trigger Wells Fargo's right to enter the Property. Here, Knight admitted in her December 16, 2010 letter (Cplt. Ex. C) that, as of June 2010, she stopped making her mortgage payments as required in paragraph 1 of the Mortgage, which states that "[b]orrower shall pay when due the principal of, and interest due on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." (Def. Mot. Ex. 4 at 5). Thus, pursuant to paragraph 9, Knight had explicitly consented, through her execution of the Mortgage and subsequent breach of one of its covenants, to Wells Fargo's taking "reasonable and appropriate" action to secure its interest in the property, including, but not limited to, entering the house and changing the locks, with no notice to Knight necessary. *See Lupas v. U.S. Bank,* NA, No. 11-14584, 2012 U.S. Dist. LEXIS 123917, *19-20 (E.D. Mich. Aug. 30, 2012) (holding that plaintiff consented to defendant lender's entry and securing of the property by way of the mortgage agreement and by failing to fulfill the obligations thereunder). In light of the circumstances, with the Property being unlivable and Knight not having made payments for months, the court cannot say that Wells Fargo's actions were not "reasonable and appropriate." Therefore, Knight's trespass claim should be dismissed for failing to state a claim upon which

14

relief could be granted.

Even as amended, Knight's trespass claim remains deficient as a matter of law. Knight continues to allege that the entrance by Wells Fargo onto her property and the changing of her locks violated paragraph 7 of her mortgage. However, as outlined above, Wells Fargo did not need to rely on paragraph 7 in order to enter the property. Rather, Wells Fargo could rely on paragraph 9 for the reasons stated above.[8] Accordingly, Knight's motion to amend should be denied as to her trespass claim.

### 2. Breach of Contract

Count Two of Knight's proposed amended complaint[9] alleges that Wells Fargo breached its obligations under Paragraphs 5 and 7 of the Mortgage (as well as the terms of the November 22 Fax)[10] when it used the insurance proceeds to pay off her entire loan balance rather than disbursing those proceeds to her for use in repairing the property. (Doc. #24, Amended Cplt. at ¶46). Knight alleges that Paragraphs 5 and 7 of the Mortgage gave her the right to use the insurance proceeds to repair the Property, and that she advised Wells Fargo, both orally and

---

[8] Knight cannot avoid dismissal by alleging in her proposed amended complaint that she "was not in default…" (Proposed Amended Cplt. ¶24). That is a legal conclusion that the court need not accept as true. *Iqbal*, 129 S.Ct. at 1949. *See also, supra* at 12. It also misses the mark, as paragraph 9 of the Mortgage did not require that she be in formal "default" of the Mortgage, but merely that she "fail[] to perform" one of the Mortgage's covenants. (Doc. #3-4 at 9). In Knight's December 16, 2010 letter, which she attached as Exhibit C to her original complaint, she admits that she had stopped making loan payments in June 2010, which clearly constitutes a failure to perform the Mortgage's first covenant. (Doc. #1-1 at 29; Doc. #3-4 at 9). The court cannot simply ignore that admission, and must consider it when determining whether Knight's proposed amendment would be futile. *See Ferguson v. Neighborhood Housing Servs.*, 780 F.2d 549, 551 (6th Cir. 1986) ("[U]nder federal law, stipulations and admissions in pleadings are generally binding on the parties and the court.").

[9] Because Knight's allegations with respect to her breach of contract and fraud claims are clearer in her proposed amended complaint, the rest of the court's analysis will focus on the allegations in that pleading.

[10] Wells Fargo incorrectly states that Knight alleges a breach of only the November 22 Fax and Paragraph 7 of the Mortgage. (Doc. #25 at 10).

through the documents she supplied in response to the November 22 Fax, that she wished to use the proceeds for that purpose. (*Id.* at ¶¶35, 38).

Wells Fargo argues that even as amended, Knight's breach of contact claim is futile. First, Wells Fargo argues that there was "no contract between the parties requiring Wells Fargo to disburse the insurance funds to repair the Property" because, in its view, Knight affirmatively elected to have the insurance proceeds applied to her mortgage balance when she executed and returned the LD 423 Signature Page. (Doc. #25 at 10). Second, Wells Fargo argues that because Knight was in default (due to non-payment on the note) during the salient time, she "cannot maintain an action against [Wells Fargo] for [its] subsequent breach or failure to perform." (*Id.* at 11) (quoting *Flamm v. Scherer*, 40 Mich. App. 577, 585 (2007)). Taking Knight's allegations in the light most favorable to her, *Williams*, 2012 WL 2874041 at *3, the court rejects Wells Fargo's first argument, but finds that its second argument is meritorious.

### a.       Existence of a Valid Contract

To plead breach of contract under Michigan law, Knight must allege "(1) the existence of a valid contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Keiper, LLC v. Intier Auto. Inc.*, 467 Fed. Appx. 452, 459 (6th Cir. 2012). In turn, the essential elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Thomas v. Leja*, 187 Mich. App. 418, 422 (1991). A "valid contract requires mutual assent or a meeting of the minds on all the essential terms." *Kloian v. Domino's Pizza, LLC*, 273 Mich. App. 449, 453 (2006). The plaintiff bears the burden of proving the existence of the contract she seeks to enforce. *Kamalnath v. Mercy Mem. Hosp. Corp.*, 194 Mich. App. 543, 549 (1992). Knight's

16

amended complaint satisfies the pleading requirements on this issue.

The parties do not dispute the Mortgage's overall validity as a contract.  There is no dispute about the parties' competency or the subject matter in issue, and Knight obtained a loan from Wells Fargo in exchange for a promise to repay and a security interest (the Mortgage) in the Property.  Both sides agreed to this mutual consideration and to the obligations spelled out in the Mortgage (and other closing documents).  The question, then, is whether Knight has pled sufficient facts to support her argument that one of those obligations required Wells Fargo to disburse the insurance proceeds to Knight for the purpose of repairing the Property.

The court's analysis begins with the Mortgage's salient terms.  Paragraph 5 of the Mortgage provides, in pertinent part: "Unless Lender and Borrower otherwise agree in writing, any insurance proceeds [] shall be applied to restoration or repair of the Property…"[11] (Mortgage ¶5).  Thus, barring some other valid written agreement, the parties had agreed that Wells Fargo would disburse any insurance proceeds to Knight for use in restoring or repairing her property in the event of a loss.[12]  Wells Fargo appears to argue that the parties did "otherwise agree in writing" to use the insurance funds to pay off Knight's loan based on its contention that she "executed and returned the LD423 *Letter*" which was part of the November 22 Fax.  (Doc. #25 at 10) (emphasis added).  But, at least at this stage, that argument is flawed in a few respects.

Knight contends that she "did not sign and send in to Wells Fargo [the LD423 Letter]." (Doc. #20 at 3).  Rather, she claims she sent in only the LD 423 Signature Page, and not the LD

---

[11] This paragraph also allows Wells Fargo to apply the proceeds to the loan balance if the repair "is not economically feasible" or if its "security would be lessened," issues Wells Fargo does not raise.  (*Id.*).

[12] Wells Fargo's assertion that there was "no contract between the parties requiring [it] to disburse the insurance funds to repair the Property" focuses entirely on the parties' post-Fax conduct, and oversimplifies the issue.  (Doc. #25 at 10).

423 Letter.  (*Id.*).  While her point lacks merit in one regard – namely because the Letter stated: "By signing the attached, you acknowledge and consent to … [using the settlement funds to pay off your loan]" – other ambiguities and questions abound.  For instance, the very first line of the LD 423 Letter states, "Wells Fargo has been advised that you wish to payoff [sic] the loan for the [Property] with the settlement check(s) from the insurance proceeds."  However, it does not appear that Knight ever expressed a desire to use the insurance proceeds for that purpose.[13]  Also, the LD 423 Letter is at least somewhat ambiguous in terms of its instructions as to what Knight was to send back to Wells Fargo to commence the loan payoff process; on the one hand, it instructs her to return "this executed letter," while, on the one hand, it tells her to return "this executed attachment."  Again, Knight claims that she did not send in the "letter," *i.e.*, the LD 423 Letter, but only the LD 423 Signature Page.  Although her chance of success on the point seems slight, interpreting the facts in the light most favorable to Knight at this stage, the court cannot say that her position necessarily fails as a matter of law.

The court must also consider the impact of what it considers to be Knight's principal allegation: that the Wells Fargo agent with whom she spoke on the phone[14] specifically

---

[13] Other pages of the Fax are similarly erroneous, leading to additional ambiguity.  For instance, page 8 of the Fax (Doc. #3-2 at 8), dated November 22, 2010, states: "An insurance claim check has been received for $62,905.46 and deposited into a special escrow account."  However, it is undisputed that at that time, Knight still had the check in her possession.

[14] Wells Fargo argues that, to the extent Knight alleges an oral agreement based on promises or representations made over the phone by its representatives, such claims are barred by the statute of frauds.  In support of its argument, Wells Fargo cites M.C.L. § 566.132(2), which states:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
> > (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

18

instructed her to sign the LD 423 Signature Page as her "authorization" for Wells Fargo to release the funds for purposes of repairing the Property.  (Proposed Amended Cplt., *e.g.*, ¶¶48, 58; Doc. #20 at 3-4).[15]  That allegation is not inconsistent with the Fax's first and second pages of text which stated: "***The following pages*** [which included the LD 423 Signature Page] will provide the instructions and forms that ***we need signed and returned*** to us along with the check" to commence the repair funds disbursement process (Doc. #3-2 at 2) (emphasis added) and that "Written authorization must be received to work with any other party" (*id.* at 3).

Finally, adding to the Fax's overall ambiguity, and the factual complexity of this case, is the fact that Page 4 of the Fax unequivocally stated: "When the [Repair Documentation] ha[s]

---

(b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

(c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

However, Wells Fargo does not explain how any of these provisions apply to the transaction at issue in this case.  Any agreement between Knight and Wells Fargo regarding the application of insurance proceeds, either to the repair of the subject property or to the loan, does not appear to fall under the categories outlined above, and Wells Fargo cites no case supporting the inclusion of this type of agreement into the narrow categories of the statute.  Moreover, Wells Fargo's argument ignores that the relevant agreement is the one contained in paragraph 5 of the Mortgage in which the parties agreed that "[u]nless Lender and Borrower otherwise agree in writing, any insurance proceeds … shall be applied to restoration or repair of the Property…" (Doc. #3-4 at 8), and that the phone conversation in question simply addressed how to initiate the process for receiving the funds for that purpose.

A closer question might be whether the parol evidence rule bars inclusion of oral representations by Wells Fargo representatives.  However, Wells Fargo does not make this argument and, regardless, the court finds that it is not applicable here where there is a question of fact as to the validity and effect of Knight's execution of the LD 423 Signature Page.  *Mardon v. Ferris*, 328 Mich. 398, 400 (Mich. 1950) ("Where parol evidence is offered to show that the written contract is void or not of binding force, it is admissible; but, if the object be to prove that it was intended to mean something different from what its language imports, it is inadmissible") (internal citations omitted)

[15] At the hearing, Knight answered "Yes, sir," when the court asked her whether this was in fact what she was asserting had happened.

been received, <u>a check equal to one-third of the claim check(s) received by our office **will be issued** to you and your contractors</u>" (Doc. #3-2 at 4) (emphasis added).  Since Knight alleges that she provided all of the Repair Documentation to Wells Fargo (albeit along with the LD 423 Signature Page) (Proposed Amended Cplt. ¶38), she has a potentially valid argument that upon receipt of that Documentation, Wells Fargo was obligated to disburse the insurance funds for repair purposes.[16]

The court rejects Wells Fargo's argument that if Knight had "any questions regarding contract terms, it is her obligation to request such information."  (Doc. #25 at 10) (citing, *e.g.*, *Scholz v. Montgomery Ward & Co.*, 437 Mich. 83, 92 (1991)).  Again, Knight alleges that she contacted Wells Fargo to inquire into the proper procedure, and that she did exactly as she was instructed.  Moreover, upon receiving all 18+ pages of Knight's Repair Documentation, *see* Proposed Amended Cplt. Ex. E (a "Work Authorization" for "the repairs," detailed estimates for the repairs, and copies from the November 22 Fax related to the process for using the insurance proceeds to repair the Property), accompanied by the one LD 423 Signature Page without the LD 423 Letter, Wells Fargo had every reason to at least perceive an ambiguity in Knight's intentions.  Yet, Wells Fargo essentially asks the court to ignore its receipt of the Repair Documentation, and to focus solely on its simultaneous receipt of the LD 423 Signature Page, as if the latter trumps the former as a matter of law.  The court is unwilling to do so because, taken in a light most favorable to Knight, she has stated a plausible claim that: (1) Wells Fargo had a contractual obligation to use the insurance proceeds to repair the Property; and (2) her

---

[16] Wells Fargo's contention that Knight "opted not to execute" the "portion of the November 22 [Fax]" that would have been required to select the "repair option" is misplaced.  (Doc. #25 at 10).  Wells Fargo never specifies what document Knight supposedly "opted not to execute," nor does there appear to be any other document in the fax that she *could* have executed, aside from the certification of completion of repairs, which was certainly not intended to be executed before repairs even began.

submission of the LD 423 Signature Page does not evidence a valid "meeting of the minds" on an agreement to apply the insurance proceeds to her loan balance rather than using them for repair purposes. *Kloian*, 273 Mich. App. at 453; *Twombly*, 550 U.S. at 570.[17] .

### b.      Knight's Prior Breach as a Defense

Wells Fargo argues that Knight "cannot bring a breach of contract claim under the Mortgage, when she breached the Mortgage first." (Doc. #25 at 11). The Mortgage's first covenant required Knight to "pay when due the principal of, and interest on, the debt evidenced by the Note …" (Doc. #3-4 at 5). Although Knight now claims that she was not in "default," the court need not accept that legal conclusion as true, and it takes notice of her December 16, 2010 letter in which she admits that she had not made her Mortgage payments for months. *Supra* fn. 8.

"The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Michaels v. Amway Corp.*, 206 Mich. App. 644, 650 (1994) (quoting *Flamm v. Scherer*, 40 Mich. App. 1, 8–9) (1972)). The rule only applies if the initial breach was substantial. *Id.* Clearly, Knight's failure to make multiple monthly payments constitutes such a breach. *Tawfik v. BAC Home Loans Servicing, LP*, 2011 WL 6181441, at *3 (Dec. 13, 2011). Because Knight's breach preceded any contractual obligation Wells Fargo might otherwise have had to disburse the insurance proceeds for repair purposes, she cannot maintain a breach of contract action for its failure to do so. *Frost v. Wells Fargo Bank, N.A.*, --- F.Supp.2d --, 2012 WL 4755023, at *9 (W.D. Mich., Oct. 4, 2012); *Fifth Third Bank v. Danou Technical Park, LLC*, 2012 WL 933983,

---

[17] Knight also alleged that Wells Fargo's alleged trespass constitutes a breach of paragraph 7 the Mortgage. For the reasons already stated above, *supra* at 13-15, Wells Fargo acted in accordance with the terms of the Mortgage, and thus a breach of contract claim under that particular theory would be a futile amendment and should not be allowed.

at *10 (Mich. App., Mar. 20, 2012) (holding that a borrower who breached mortgage/loan agreements by failing to repay the loan "is not entitled to raise a claim premised on the other party's failure to perform" and "is not entitled to specific performance of the remainder of the contract."). Accordingly, her breach of contract claim should be dismissed, and her motion to amend that claim should be denied.

### 3. Fraud

Count Three of Knight's proposed amended complaint alleges fraud. Under Michigan law, the elements of a fraud claim are:

> (1) That defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff;(5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Alternative Aviation Servs. v. Meggit[UK] Ltd.*, 207 Fed. Appx. 506, 514 (6th Cir. 2006) *quoting Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976). Furthermore, under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

Knight alleges that she contacted Wells Fargo by phone on November 22, 2010, to determine what her options were for repairing the Property, and that in response, an agent in Wells Fargo's property loss department faxed her the twelve-page Fax. (Proposed Amended Cplt. ¶10). She alleges that this agent specifically instructed her to endorse "the last signature page" in order to authorize disbursement of the insurance claim funds for repair purposes, and to provide written authorization to allow Wells Fargo to work with any and all parties during the claims process. (*Id.* ¶¶12, 48). *Supra* fn. 1, 4, 15. She alleges that this representation was a

22

verbal one.  (Proposed Amended Cplt. ¶60).  Knight alleges that the last signature page in the November 22 fax was the LD 423 Signature Page.  (*Id.* ¶¶52, 62).[18]  Knight alleges that the Wells Fargo agent knew that the statement he or she made (specifying that Knight endorse the last signature page in the packet in order to process the claim for repairs) was false, or was made with reckless disregard for its truth or falsity in that s/he knew that Wells Fargo would treat its receipt of the last signature page, the LD 423 Signature Page, as a request to use the insurance proceeds to pay off the Mortgage, regardless of any other documentation that might accompany it showing that she actually wished to use those proceeds to repair the property.  (*Id.* ¶¶59-60).  She alleges that Wells Fargo intended her to rely on that representation.  (*Id.* ¶¶61, 64).

Knight alleges that she relied on the statement of the Wells Fargo agent and performed as instructed by the agent and according to the instructions in the Fax in order to process a claim for repairs, as she sent Wells Fargo all of the required Repair Documentation and written authorization (via the "last signature page," the LD 423 Signature Page).  (*Id.* ¶¶11, 38-39, 50, 54-55, 62, 65).  She alleges that she did not send back the LD 423 Letter, which, per the instructions in that Letter, arguably was to be sent back in order to process a request to pay off the loan.  *Supra* at 18. (Proposed Amended Cplt. ¶¶56-57).  Knight further alleges that she was injured as a result of Wells Fargo agent's misrepresentation as she does not have use of the money for the repairs and is now in possession of a house she can neither repair nor rent.  (*Id.* ¶¶63, 66).  She alleges that she also cannot pay her contractor in full for the repairs already made to the property.  (*Id.* ¶67).

---

[18] Although she alleges in her pleadings that this Signature Page was not connected with the LD 423 Letter, as she believed at that time that Letter was faxed as page 8 of 12 and the Signature Page was faxed as page 10 of 12, at the hearing Knight agreed that the LD 423 Letter and Signature Page were, in fact, consecutively numbered as pages 9 and 10 of the Fax.  (*Id.* ¶¶50-51).  *Supra*, fn. 4.  However, for the reasons discussed above, the mere fact that these two pages were consecutive does not necessarily end the inquiry in Wells Fargo's favor.  *Supra* at 17-21.

23

Contrary to Wells Fargo's argument that Knight's allegations do not reach the level of particularity required by Rule 9(b), the court finds that the level of detail in her proposed amended complaint, as outlined above, is sufficiently specific to comply with the requirements of that Rule.  She has alleged the identity of the party making the alleged misrepresentation as an agent in Wells Fargo's property loss department.[19]  She has alleged that the misrepresentation took place verbally, over the phone, just prior to being sent the November 22 Fax.  She alleges the specific content of the misrepresentation: that she endorse "the last signature page" in the Fax in order to process the claim for repairs.  She alleges generally the deceptive intent on the part of the Wells Fargo agent, and she alleges reliance on the alleged misrepresentation and damage as a result.[20]

Because Knight's proposed amended fraud claim complies with Rule 9(b)'s pleading requirements, the court recommends that her motion for leave to amend her complaint as to that claim be granted, and that Wells Fargo's motion to dismiss her fraud claim be denied as moot.

---

[19] Rule 9(b) does not require Knight to identify this person by name.  *See United States ex rel Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 507 (6th Cir. ) (holding that Rule 9(b) does not require plaintiff to plead the identity of corporate employee who made alleged misrepresentation).  Furthermore, as the purpose of Rule 9(b) is to put a defendant on "sufficient notice of the misrepresentation," information such as the name of the individual employee is not necessary here, where Knight has alleged that the allegedly fraudulent statement was made by a single Wells Fargo employee, where she has identified the department in which that individual worked, and the time at which the individual made the alleged misrepresentation.  If a plaintiff were required to remember the name of every customer service representative that she came into contact with, when the relevance of that name would not be known to her for several months, corporations would "defeat almost any suit based on such a fraud."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 554-55 (9th Cir. 2007).  Finally, based on the level of detail Knight did provide, it is likely that Wells Fargo would be able to determine the name of this individual through customer service notes or other items in the loan file.

[20] For the reasons discussed above, *supra* at 17-21, the court declines to conclude that Knight's reliance on the alleged oral statement was not "reasonable" as a matter of law.

### III.     CONCLUSION

For the foregoing reasons, the court **RECOMMENDS** that plaintiff Knight's Motion for Leave to File a First Amended Complaint **[13]** be **GRANTED** as to Count Three (fraud), and **DENIED** as to Counts One (trespass) and Two (breach of contract).   The court further **RECOMMENDS GRANTING** defendant Wells Fargo's Motion to Dismiss **[3]** as to Counts One (trespass) and Two (breach of contract) of Knight's Complaint, and **DENYING** that motion as moot as to Count Three (fraud).


Dated: January 8, 2013                               s/David R. Grand_____
Ann Arbor, Michigan                               DAVID R. GRAND
                                                             United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).   The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).   Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.   A party may respond to another party's objections within 14 days after being served with a copy.   *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).   Any such response should be concise, and

should address specifically, and in the same order raised, each issue presented in the objections.


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 8, 2013.

s/William Barkholz for Felicia M. Moses
FELICIA M. MOSES
Case Manager