UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONYA KNIGHT,

      Plaintiff,    Case No. 12-cv-12129
               Honorable Mark A. Goldsmith
               Magistrate Judge David R. Grand

v.

WELLS FARGO,

      Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [47], AND DENY PLAINTIFF'S MOTION
FOR LEAVE AND MOTION FOR SUMMARY JUDGMENT AS MOOT [57, 58]**

**I.  RECOMMENDATION**

Before the Court are Defendant Wells Fargo's motion for judgment on the pleadings, or, in the alterative, for summary judgment [47] and Plaintiff Tonya Knight's motion for leave to file a motion for summary judgment and her corresponding motion for summary judgment, [57, 58] referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). A hearing was held on January 29, 2014, with respect to Wells Fargo's motion, where both parties presented argument. Subsequent to the hearing, the Court held the motion in abeyance pending settlement discussions. The Court also advised that it would hold Knight's motions in abeyance pending its ruling on Wells Fargo's motion. The parties were to report back to the Court by February 6, 2014, if they were able to reach a resolution. To date, the Court has not received any communication from the parties. Therefore, the matter is now ripe for decision. For the following reasons, the Court RECOMMENDS that Wells Fargo's motion for summary judgment [47] be GRANTED and Knight's motions [57, 58] be DENIED AS MOOT.

**II.     REPORT**

    **A.     Factual Background**

        *1.     The Mortgage*

This case arises out of the mortgage relationship between plaintiff mortgagor Tonya Knight (proceeding here *pro se*) and defendant mortgagee Wells Fargo. Knight is the owner of a rental property at 14818 Washburn St. in Detroit, Michigan (the "Property"), upon which Wells Fargo held a mortgage pursuant to a 2004 re-finance transaction (the "Mortgage") securing an underlying loan (the "Loan"). (Knight Dep. at 6-7, 9, 10; Def. Mot. Ex. 4). The Property has two rental units that were both occupied by tenants. (Knight Dep. at 11). Knight's monthly mortgage payments were $743.99. (Def. Mot. Ex. 3 at ¶3(B)). Knight stopped making payments in June 2010 when her tenants began having trouble paying their rent.[1] (Knight Dep. at 27-28). Although she had the funds to pay off the Loan at this time, she declined to do so and instead wished to dispose of the Property via a short sale. (*Id.* at 29-30; 34).

        *2.     The Fire*

On August 11, 2010, Knight's tenants caused a fire to the Property, rendering it uninhabitable. (First Amended Complaint ("FAC") at ¶ 7; Knight Dep. at 21-22). On September 20, 2010, Knight signed work authorization forms to enable a contractor to repair the Property. (Knight Dep. at 38). The cost of the repairs was estimated to be $64,000. (*Id.* at 55). Knight paid an out-of-pocket deposit of $12,000 to start the work due to the fact that she had not

---

[1] In her response to Defendant's motion, Knight alleges that she made payments in the amount of $1,000 a month "for the life of the loan" up until June 2010. However, this claim is not supported by any evidence of record, as Knight offers no exhibits to support it, nor avers to its truth in either of her two affidavits. Regardless, even if she did make payments in this amount, she has not alleged or offered evidence that these over-payments were to be applied to future payments, rather than be applied to reduce the then-existing principal amount owed on the Mortgage. Furthermore, her payment status is generally irrelevant to whether or not she has sufficiently pleaded and supported a case that Wells Fargo committed fraud here.

yet received any insurance proceeds. (*Id.* at 38; 56). On November 2, 2010, Knight's insurance company issued a check to her and Wells Fargo jointly for the fire damage in the amount of $62,305.46. (FAC Ex. C).

### 3. *The November 22, 2010 Phone Call*

On November 22, 2010, Knight called Wells Fargo to get a clearer understanding about her options for the Property. (Def. Mot. Ex. 5).[2] Knight first discussed her options with "Elaine" from Loan Servicing. (*Id.*). A recording was made of this portion of the call and was submitted by Wells Fargo as an exhibit to its motion. (*Id.*). At the time of the call, Knight expressed uncertainty about what she wanted to do with the Property. (*Id.*). During this portion of the call, Knight stated that the Property was not worth putting any more money into and she was concerned that the insurance proceeds would not cover the cost of the repairs. (*Id.*). She was informed during the call that she was five payments behind in her Mortgage, and owed Wells Fargo $4,251.00 to bring her account current. (*Id.*). During this portion of the call, Elaine discussed two options with Knight: paying off the Loan or repairing the Property. (*Id.*). Elaine also mentioned a third option, a short sale, but after a brief review informed Knight that she was not eligible for a short sale. (*Id.*). Several times during the call Knight expressed interest in Wells Fargo "working" with her to reduce the amount she would owe on the Loan. (*Id.*). However, by the end of that portion of the call, Elaine made clear that Wells Fargo was not inclined to reduce the principal amount on the Loan. (*Id.*). Elaine informed Knight that unless she brought the account current her account would be placed in foreclosure. (*Id.*).[3] At the

---

[2] Knight testified at her deposition to having numerous calls with Wells Fargo after the fire. However, the dates of those other alleged calls are not in evidence. (*See e.g.* Knight Dep. at 25, 36, 40-41).

[3] At one point in her deposition, Knight testified (contrary to the statements in the audio tape)

3

conclusion of the call, Knight asked about the process for submitting her insurance check to Wells Fargo, since it was in both her name and Wells Fargo's name. (*Id.*). Elaine then connected Knight to the Property Preservation and Loss Department to better assist her with that issue. (*Id.*). The recording ends at the point of this transfer. (*Id.*).

Knight testified that when she discussed the issue with Wells Fargo on November 22, 2010, she was advised that in order to work with a third party, namely her contractor, and to distribute the insurance proceeds for repairs, Wells Fargo would need "a written authorization." (Knight Dep. at 42). Specifically, her complaint alleges that during this conversation, an agent at Wells Fargo's Property Loss Department stated to her that "written authorization must be received by Wells from plaintiff, in order to allow Wells Fargo to disburse the claim funds, and to authorize Wells Fargo to work with any and all third parties during the claims process." (FAC ¶ 12). She further alleges that the Wells Fargo representative directed her to "endorse the last signature page" to accomplish this. (*Id.* ¶ 48; 60). Knight also averred in an affidavit that the Wells Fargo representative told her to "endorse the last signature page." [54, ¶ 4]. Later that same day, the Property Loss Department sent Knight a 12-pag fax (the "Fax"). (Def. Mot. Ex. 1).

---

that she never discussed with the Wells Fargo representative the fact that she was behind in her payments on the Loan. (Knight Dep. at 30; 46). However, at another point she admitted to discussing the option of paying off the Loan, or at least bringing it current, and what she owed because she was past due. (*Id.* at 27-28). She also testified that when she discussed the possibility of doing a short sale on the Property, Wells Fargo "okayed that." (*Id.* at 31). Again, that contention is contradicted by Elaine's statements on the audio tape. The Court notes, though, that Knight alleges she had numerous conversations with Wells Fargo about the Property, though only the first half of the November 22, 2010 conversation was offered in evidence. (*See e.g.* Knight Dep. at 25 (testifying she called Wells Fargo shortly after the fire occurred); 36 (testifying she contacted Wells Fargo "several times"); 40-41 (testifying that she and her contractor called Wells Fargo "several times" including "[e]very day or two for weeks" to ensure they had a "clear understanding of exactly what was required" to repair the Property)).

    4.  *The November 22, 2010 Fax*[4]

  Page 1 of the Fax is the cover page. Page 2 is a November 22, 2010 letter from Wells Fargo to Knight, acknowledging her recent notification of the fire damage. (*Id.* at 2). The letter outlines the procedures necessary to complete the repairs and explains the process for disposition of funds. (*Id.*). It states that, "[i]n most instances, the funds will be disbursed to you in 1/3 increments to cover the cost of repairs as they are completed," subject to periodic inspections to ensure the work is being completed properly. (*Id.*). The letter then states, "The following pages will provide the instructions and forms that we need signed and returned to us along with the check containing all necessary endorsements." (*Id.*). The letter goes on to state, "If your insurance check exceeds your current outstanding balance, you have the option to pay off the loan. Please submit your written request to pay off your loan along with the fully endorsed check to us." (*Id.*). At the bottom of the page is the file name "LD715/B06/1" and underneath that, the term "Enclosures." (*Id.*).

  Page 3 of the Fax instructed Knight to "take a few moments to review this letter and the enclosed forms as they are important to the timely processing of your claim. These guidelines have been created to help protect both you and Wells Fargo Home Mortgage during the repair process." (*Id.*). It then lists the items needed for "timely processing of your claim." (*Id.* at 3).

---

[4] A previous issue in this case, on Defendant's initial motion to dismiss, was the Fax's content and order of the pages. Knight alleged that Wells Fargo sent her the Fax intentionally out of order and incomplete (missing pages) as part of the fraud alleged in this case. [28 at 4, fn. 2]. The Court was somewhat skeptical of Knight's allegations as the fax transmittal line on the pages she attached to her papers suggested Wells Fargo had faxed her the complete Fax, in order. [*Id.*]. However, Wells Fargo did not, as part of that briefing, provide the Court with a complete copy of the Fax as sent to Knight. [*Id.*]. Thus, the Court found a material question of fact existed about the Fax's content and pagination. [*Id.* at 24]. However, at the hearing on the instant motion Knight admitted that her allegations about an incomplete and/or out-of-order Fax lack merit; indeed, Wells Fargo has now tendered a complete copy of the Fax including a clear transmittal line delineating all 12 pages which shows it was not sent to her out of order. [47-2].

They include:

- Fully endorsed claim check from your insurance carrier identified with your mortgage loan number…

- Insurance Adjustor Worksheet or contractor's estimate itemizing damages…

- Signed contract(s) for repairs from each contractor working on your home…

- Federal Tax Identification form (W-9)…

- Certification of Completion form signed by all mortgagors when work is complete

- Current home and work phone number for customer. Written authorization must be received to work with any other party during the claim process

- General Information Form[5]

(*Id.*). There is a file name at the bottom of this page as well, "LD715/B06/2/OS1." (*Id.*).

Page 4 of the Fax states, in pertinent part, that to receive the first release of payment, "Wells Fargo Home Mortgage must receive all of the above items, except the Certificate of Completion, before processing continues. When the items have been received, a check equal to one-third of the claim check(s) received by our office will be issued to you and your contractors." (*Id.* at 4). It goes on to discuss the steps for the second and final release of funds. (*Id.*). It then has a section entitled "Important Notes," which includes the note that "If your loan is past due, these guidelines may change." (*Id.*). At the bottom of this page appears a file name "LD716/B06/1." (*Id.*).

Page 5 of the Fax is titled "Conditional Waiver of Lien." (*Id.*). Its purpose was for a contractor to release any liens for labor or material used in restoration or construction of the

---

[5] The court will refer to these materials as the required "Repair Documentation."

Property. (*Id.*). This copy of the waiver was signed on December 16, 2010, by both Knight and her contractor. (*Id.*). The file name at the bottom of the page was "LD716/B06/2/OS1." (*Id.*). Page 6 is a certification of completion of repairs, which includes a signature line for "Tonya Knight." (*Id.*). The file name for this page is "LD717/B06/1." (*Id.*). Page 6 is a certification of completion of repairs for to be completed by Knight at the conclusion of repairs. (*Id.*). Page 8 of the fax is a "General Information Form." (*Id.*). This copy was filled out by Knight stating that her date of loss was August 11, 2010, due to a fire. (*Id.*). She provided her own contact information, as well as the "Name, address and telephone number of the contractor(s) if applicable" and the name and telephone numbers of both her insurance adjuster and a person for purposes of inspection. (*Id.*). This document was labeled "LD717/B06/2/OS1." (*Id.*).

Page 8 is a request for taxpayer identification and certification to be filled out by a contractor. (*Id.*). This page was completed by Knight's contractor on January 11, 2011. (*Id.*). the document was labeled "LD718/BO6." (*Id.*).

Page 9 is another November 22, 2010 letter from Wells Fargo, stating that "Wells Fargo Home Mortgage has been advised that you wish to payoff [sic] the loan for the above-referenced property with the settlement check(s) from the insurance proceeds."[6] (*Id.*). It then states:

> By signing ***the attached***, you acknowledge and consent to the following:
>
> 1.    You authorize Wells Fargo Home Mortgage to negotiate the endorsed settlement check(s), which you will submit ***with this executed attachment***.
>
> 2.    Wells Fargo Home Mortgage requires a minimum of at least fifteen (15) calendar days to refund any remaining funds, if applicable, from the date of receipt of the settlement check(s).

---

[6] Reading the Fax as a whole (and in proper order), it is clear that the first 8 pages related to an election to use the insurance proceeds to repair the property, while Pages 9 and 10 are the paperwork related to using those funds to pay off the Mortgage.

> 3. There is no cancellation or retraction of the authorization to payoff [sic] the loan from the insurance proceeds at a subsequent date.
>
> 4. You, as mortgagee, are responsible for payment of any outstanding repair bills or supplies.
>
> 5. Per diem interest will continue to accrue until this executed letter is returned and received by Wells Fargo Home Mortgage.

(*Id.*) (emphasis added). The letter requests that Knight "[p]lease send the endorsed settlement check(s) and *this executed letter*" to Wells Fargo. (*Id.*) (emphasis added). At the bottom of the letter, the word "Enclosures" appears under a file name "LD423/B06/1." (*Id.*). The court will refer to this page as the "LD 423 Letter."

The next page is page 10 of the Fax. (*Id.*). This page contains only the Loan number, Knight's name, and the following statement: "I/We, the above-listed borrower(s), acknowledge and agree to comply with all the terms as listed in this notice." (*Id.*). This is followed by two blank borrower signature lines and lines for dates. (*Id.*). Below them is the file name "LD423/B06/2/OS1." (*Id.*). The court will refer to this page as the "LD 423 Signature Page". Knight signed this page on January 11, 2011. (*Id.*).

Page 11 is yet another November 22, 2010 letter from Wells Fargo, which states that an insurance check had been received, and was being held by Wells Fargo in a special escrow account. (*Id.*). The letter then states: "[d]ue to the status of your loan [presumably in default for non-payment], in order for us to continue to process your claim, please select one of the following options:

> 1. Bring your mortgage account current and if the insurance claim check amount does not exceed $15,000.00, please contact the Property Loss department in order for the funds held in the special escrow account to be released to you for use towards repairs of the property. Please note: If the check amount exceeds $15,000.00, please refer to the enclosed claim package for further information.

8

> 2.      You may select a contractor to complete the repairs. Payment will be issued payable jointly to you and your contractor for completion of the repairs. The claim will be processed based on the enclosed guidelines.
>
> 3.      You may use personal funds to make repairs and provide a letter of authorization to apply claim funds to your monthly mortgage payments. If this option is selected, Wells Fargo Home Mortgage will need to receive all documents listed in the enclosed package along with verifiable paid receipts for all necessary material and labor. After our 100 percent inspection has been completed, the claim funds will be applied toward the balance due on the loan. If funds remain after the loan is contractually current, they will be released to you."

(*Id.*). The file name at the bottom of this page is "LD424/B06/1." (*Id.*). Page 12 of the Fax bears a heading indicating it is "Page 2" of this same letter, and it notes that the requirements and forms for review are enclosed in the Fax. (*Id.*). The file name at the bottom of this page is "LD424/B06/2/OS1." (*Id.*).

### 5.      *The Parties' Post-Fax Conduct*

Knight testified that in January 2011, she and her contractor sent back the W-9 and tax ID sheet, the work order sheet, the contractor information and the signed check in order to begin the process for repairs. (Knight Dep. at 44). She also included the LD 423 Signature Page. (*Id.* at 48). In her complaint, Knight alleges that the only reason she included the LD 423 Signature Page with the Repair Documentation "was to provide written authorization as specified by Wells Fargo's agent and [Page 3 of the Fax]." (FAC ¶¶44, 48, 58). This document was executed on January 11, 2011. (Def. Mot. Ex. 1). Knight testified that she and her contractor called Wells Fargo on the day she submitted these documents to inform them she was sending them the check and that she was informed at that time that she would be receiving something back in five to seven days. (Knight Dep. at 44). She testified that what she was to receive back was a scheduling of the first inspection. (*Id.*). Prior to this date, on January 6, 2011, Wells Fargo sent Knight correspondence stating that it had received authorization for it to speak with a realty

company. (FAC Ex. H). Knight testified that she had sent this authorization to begin the process of a short sale with Wells Fargo, and that this letter was Wells Fargo's acknowledgment of the agency relationship and the existence of a short sale. (Knight Dep. at 34-36; 60-63).[7]

On January 19, 2011, Wells Fargo sent Knight correspondence stating that it had "processed the funds necessary to pay [her] loan in full." (Def. Mot. Ex. 6). On February 4, 2011, Wells Fargo sent Knight a notice that it had paid her Mortgage Note in full from the insurance proceeds, that notice was accompanied by a check in the amount of $22,406.36, which was the balance of the insurance proceeds after her Loan was paid off. (FAC ¶ 15; Ex. G).

On February 14, 2011, Knight wrote to Wells Fargo to inquire why it used the insurance proceeds to pay off her Note rather than for the repairs as she believed she had requested. (FAC Ex. I). Knight's complaint alleges that Wells Fargo, at the time it used her proceeds to pay off her Loan, knew that she had intended to use the money for repairs and do a short sale on the Property. (*Id.* ¶ 15-16). On March 18, 2011, Wells Fargo responded to Knight's letter, stating that Knight's signing of the "LD 423 Letter" was for the purpose of paying off her Loan as stated in the letter and that she could not retract her authorization. (Cplt. Ex. E). The letter went on to state that "Wells Fargo no longer has an interest in this property." (*Id.*). A certificate of discharge of the Loan was recorded in the Wayne County Register of Deeds on February 22, 2011. (Def. Mot. Ex. 8).

---

[7] It appears that Knight is referring to a letter she sent to Wells Fargo in December 2010, purportedly authorizing it to communicate with a realty company identified therein. (Cplt. Ex. C at 1). A second letter sent that same month stated "as a result of lack of funds . . . [i]n June 2010 I have become unable to make payments on this Mortgage." (*Id.* at 2). Knight goes on to state that she has placed the Property for sale with a realtor who specializes in foreclosures and short sales and has apparently received an offer, as she states, "Since the house has been on the market this is the only offer that we have received. Please accept this offer as payment in full. My agent will continue to market the house." (*Id.*). These letters were attached to Knight's original complaint and referenced in this Court's Report and Recommendation on Defendant's first motion to dismiss. [28].

10

B.  **Procedural Background**

On April 12, 2012, Knight filed a complaint against Wells Fargo in Wayne County Circuit Court alleging trespass, breach of contract and fraud. [1]. The case was subsequently removed to this court based on diversity jurisdiction. (*Id.*). Wells Fargo moved to dismiss the case under Federal Rule of Procedure 12(b)(6) for failure to state a claim. At the same time, Knight moved to amend her complaint to add specificity to her fraud claim, among other things. Both motions were granted in part and denied in part, with Knight's breach of contract and trespass claims being dismissed, and her being granted leave to file an amended complaint alleging fraud with more specificity. [28, 29]. Discovery commenced and Wells Fargo now moves to dismiss Knight's remaining fraud claim under Rule 12(c) or, in the alternative, moves for summary judgment on the claim. [47].

The Court scheduled a hearing on Wells Fargo's motion for January 23, 2014. [51]. The day before the hearing, Knight filed a motion for leave to file a summary judgment motion as well as a proposed dispositive motion. [57, 58]. A hearing was held on Wells Fargo's motion on January 23, 2014, where both parties presented argument. The Court indicated that it would hold Knight's motions in abeyance pending its resolution of Wells Fargo's motion.

C.  **Legal Standard**[8]

Federal Rule of Civil Procedure 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact

---

[8] Because the Court recommends that summary judgment is appropriate in favor of Wells Fargo, it does not address its alternative claim for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

11

is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In response to a summary judgment motion, the opposing party may not rest on its pleadings nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### D. Analysis

In her amended complaint, Knight identified two different misrepresentations that she alleges were each sufficient to constitute fraud. She first alleged that Wells Fargo intentionally sent her the Fax out of order and incomplete, to confuse her and induce her into signing a contract that resulted in her insurance proceeds being used to pay off her Loan, instead of being used to repair the Property. She further alleged that in connection with the Fax, a Wells Fargo representative orally directed her to sign "the last signature page" in the Fax, which would then permit Wells Fargo to begin issuing payment for repairs, all the while knowing that it was actually directing Knight to sign the LD423 Signature Page, which instructed Wells Fargo to pay off her Loan with the insurance proceeds.

As explained above, *supra* fn. 4, this Court previously denied Wells Fargo's motion to dismiss and granted Knight's motion to amend her complaint, in part premised on the fact that neither party had produced the entire Fax to the Court, thus preventing it from properly determining the Fax's content, pagination, and meaning. However, Wells Fargo has now provided the Court a copy of the full Fax, including its transmittal line. (Def. Mot. Ex. 1). This both demonstrates that the 12-page Fax was sent complete and in order, and disproves Knight's argument that the Fax had been intentionally (and fraudulently) sent out of order to deceive her. Knight conceded this point at the hearing. Thus, the only remaining issue is the alleged oral misrepresentation made by a representative of Wells Fargo's Property Loss Department about which document she was to sign.

As a general matter, statements made outside of a written contract may not be introduced to alter the terms of that contract. *See* C*reasy v. A & M Custom Built Homes, Inc.*, 2001 Mich. App. LEXIS 492 (Mich. Ct. App. May 15, 2001) (*citing In re Skotzke Estate*, 216 Mich. App.

13

247, 251-252; 548 NW2d 695 (1996)).  One exception to this general rule is where one party alleges fraud, illegality or mistake.  *Id. citing NAG Enterprises, Inc. v. All State Industries, Inc*., 407 Mich. 407, 410 (1979); *see also* 4 Williston, Contracts, § 631.

In Michigan, actionable fraud must generally "be predicated on a statement relating to a past or an existing fact."  *Samuel D. Begola Services, Inc. v Wild Bros*., 210 Mich. App. 636, 639 (1995).  However, "Michigan also recognizes fraud in the inducement . . . [which] occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Custom Data Solutions, Inc. v Preferred Capital, Inc.*, 274 Mich. App. 239, 242-243; (2006).  In order to state a claim for fraudulent misrepresentation, Knight must allege that: (1) Wells Fargo made a material representation; (2) the representation was false; (3) when making the representation, Wells Fargo knew or should have known it was false; (4) Wells Fargo made the representation with the intention that the Knight would act upon it; and (5) Knight acted upon it and suffered damages as a result.  *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 688 (1999).  In addition, Knight's reliance on the alleged misrepresentation must have been reasonable.  *Id.* at 689-91; *see also Bergen v. Baker*, 264 Mich. App. 376, 389, 691 N.W.2d 770 (2004); *Oivierio v. Nextel West Corp.*, No. 13-10296, 2013 U.S. Dist. LEXIS 72864 (E.D. Mich. May 29, 2013).  Because a claim for fraud in the inducement is based in contract law, rather than tort, the recovery is limited, simply rendering a contract voidable at the option of the defrauded party.  *Wild Bros.*, 210 Mich. App. at 639-40; *Whitcraft v Wolfe*, 148 Mich. App. 40, 52 (1985).

Here, Knight has alleged and averred that a representative of Wells Fargo directed her, on a November 22, 2010 telephone call, to sign "the last signature page" of the Fax in order to begin receiving payment for repairs on the Property.  [54 at ¶ 4].  Despite Wells Fargo's argument that

it did not make such misrepresentation, the only evidence it points to in support of this contention is the tape of another November 22, 2010 call with a different Wells Fargo representative, who clearly could not have made this representation because she never discussed any fax at all, let alone discussed with Knight how to proceed upon receipt of the Fax. Wells Fargo does not offer the Court any evidence of Knight's subsequent call with the Property Loss Department, either in the form of a tape, contemporaneous file notes, or even an affidavit of the representative, to rebut Knight's testimony. Thus, there at least arguably remains a genuine dispute of material fact as to exactly what statements were made by Wells Fargo's agent.

Nevertheless, Wells Fargo is entitled to summary judgment on Knight's fraud claim as there is no genuine dispute of material fact that Knight's reliance on any such alleged misrepresentation was not reasonable as a matter of law under the circumstances. Even if Knight was informed over the phone to sign a particular page in order to process her claim for repairs, the document she was actually presented, whose contents and pagination are no longer in dispute, permitted her to test the veracity of the representative's alleged statement.

Michigan Courts are clear that "there can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant." *Webb v. First Michigan Corp.*, 195 Mich. App. 470, 474 (Mich. App. Ct. 1992); *Aron Alan, LLC v. Tanfran Inc.*, 240 Fed. Appx. 678, 682 (6th Cir. 2007) ("Unreasonable reliance includes relying on an alleged misrepresentation that is expressly contradicted in a written contract that the plaintiff reviewed and signed.") (*citing Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 553 (Mich. App. Ct. 1999). Here, where it is no longer in dispute that Wells Fargo did not send the Fax out of order, but instead sent it with the LD423 Letter and Signature Page proximal to one another and with

no other missing pages, it was not reasonable, as a matter of law, for Knight to rely on any alleged oral representation that the LD423 Signature page was to be signed for some purpose other than indicating her intent to use the insurance proceeds to pay off her Loan. Page 9 of the Fax unambiguously stated, "Wells Fargo Home Mortgage has been advised that *you wish to payoff [sic] the loan for the above-referenced property with the settlement check(s) from the insurance proceeds.*"  (Def. Mot. Ex. 1) (emphasis added).  It then states:

> ***By signing the attached***, you acknowledge and consent to the following:
>
> 1. You authorize Wells Fargo Home Mortgage to negotiate the endorsed settlement check(s), which you will submit ***with this executed attachment***.

(Def. Mot. Ex. 1) (emphasis added).

Since it has been conclusively established that "the attached" was Page 10 of the Fax – the LD423 Signature Page – there is no question that by sending back that signed Signature Page, Knight authorized Wells Fargo to apply the insurance check to pay off her Loan balance.[9] Accordingly, it was unreasonable for her to rely on any alleged prior statement that she should sign "the last signature page" of the Fax in order to use the insurance proceeds to repair her property. Because Knight's reliance on Wells Fargo's misrepresentation is unreasonable as a matter of law, Wells Fargo is entitled to summary judgment on this claim. *See Bev Smith v. Atwell*, No. 308761, 2013 Mich. App. LEXIS 1256, *26 (Mich. App. Ct. July 18, 2013) (finding reliance unreasonable as a matter of law where plaintiff was presented with information that

---

[9] The Court rejects Knight's argument that her signed LD 423 Signature Page was not effective because she returned only that page, and not the entire two-page LD 423 document. The Fax makes clear that the operative document for her to elect to pay off her Loan was the LD 423 Signature Page.  (*Id.*) ("by signing ***the attached***," and submission "with ***this executed attachment***") (emphasis added). Moreover, Knight's argument, which at best goes to whether there was a meeting of the minds as to the import of her actions, has no bearing on her fraud claim, which is the only one before the Court. *See infra*, fn. 11. At all times after receiving the Fax, she could have tested the veracity of any alleged prior statement on which she was relying. *Webb*, 195 Mich. App. at 474.

contradicted an oral misrepresentation "and chose to ignore it").[10]

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Wells Fargo's Motion for Summary Judgment **[47] BE GRANTED** and that Knight's Motion for Leave to File a Motion for Summary Judgment **[58]** and her Motion for Summary Judgment **[57] BE DENIED AS MOOT**.[11]

Dated: March 4, 2014  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

---

[10] The Court recognizes that the documents Knight ultimately returned to Wells Fargo with the LD423 Signature Page – information related to repairing the Property – make a compelling case that she subjectively intended to use the insurance proceeds to repair the Property, not pay off her Loan. While Wells Fargo's decision to accept Knight's signed LD423 Signature Page as proof of her intent to pay off her Loan may have been opportunistic and not the customer service one would expect, it does not render any of Wells Fargo's alleged prior statements fraudulent. Again, even in the light most favorable to Knight, the clear terms of the Fax's two LD 423 pages make her claimed reliance on Wells Fargo's prior statements unreasonable.

The Court further notes that, even if Knight could maintain her case against Wells Fargo, it would ultimately not give her the result she seeks. As noted above, the only recovery for fraud in the inducement in Michigan is, essentially, rescission of the contract, which would place the proceeds of the insurance check back in Knight's hands, but which would also place an approximately $40,000 mortgage back on the Property, require her to return the approximately $22,000 she received after her Loan was paid off, as well as place her several payments behind on her Mortgage. Knight's deposition testimony made clear that she seeks to recover much more than simply a return to the *status quo ante*, namely approximately $390,000 in damages (including compensatory, loss of rental income and emotional distress, all trebled). (Knight Dep. at 63-71). Those damages would not be recoverable under the theory Knight has presented here. And, as it is, there is no dispute that Knight received a benefit – the extinguishment of debt – equal to the amount of the insurance proceeds kept by Wells Fargo.

[11] In her proposed motion for summary judgment, Knight claims that Wells Fargo has fabricated certain recordings. [57]. However, the recordings to which Knight cites (which occur after the November 22, 2010 phone call) are not before the Court. Furthermore, the Court need not reach the issue, because communications occurring after November 22, 2010 are not material to the allegations of fraud in Knight's complaint which center solely on misrepresentations made in the November 22, 2010 telephone call and subsequent Fax. Knight has not alleged other fraudulent misrepresentations and thus they are not properly before the Court. Knight's only other argument in her motion is the one the Court resolved against her in footnote 9, *supra*.

17

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 4, 2014.

          s/Felicia M. Moses  
          FELICIA M. MOSES  
          Case Manager