UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TONYA KNIGHT,

                    Plaintiff,                          Civil Case No. 12-12129
                                                        HON. MARK A. GOLDSMITH
vs.

WELLS FARGO,

                    Defendant.
_____/

**AMENDED OPINION AND ORDER (1) ACCEPTING THE RECOMMENDATION
CONTAINED IN THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
DATED MARCH 4, 2014 (DKT. 61), (2) OVERRULING PLAINTIFF'S OBJECTIONS
(DKT. 63), (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(DKT. 47), (4) DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO FILE
MOTION FOR SUMMARY JUDGMENT (DKTS. 57, 58), (5) GRANTING IN PART AND
DENYING IN PART DEFENDANT'S REQUEST FOR COSTS AND ATTORNEY FEES,
and (6) DISMISSING THE CASE WITH PREJUDICE**

## I.      INTRODUCTION AND BACKGROUND

In this case, Plaintiff Tonya Knight, proceeding pro se, brings a claim of fraud against

Defendant Wells Fargo.[1]   The matter is presently before the Court on the Report and

Recommendation (R&R) issued by Magistrate Judge David R. Grand (Dkt. 61).   In the R&R,

---

[1] Plaintiff's amended complaint (Dkt. 24) asserts three counts against Defendant: trespass;
breach of contract; and fraud.  In a Report and Recommendation (R&R) (Dkt. 28) regarding
Defendant's motion to dismiss (Dkt. 3) and Plaintiff's motion to amend (Dkt. 13), the Magistrate
Judge recommended that the counts of trespass and breach of contract be dismissed and that
Plaintiff be allowed to amend her complaint as to the third count, fraud.  No objections were
filed to the R&R, and the Court entered an order (Dkt. 29) adopting the recommendation in the
R&R.   Subsequently, the Magistrate Judge entered an order (Dkt. 31) directing that the
previously-filed first amended complaint would "be treated as the operative complaint going
forward to the extent it asserts claims that have not been dismissed."  Accordingly, the only
count that remains pending in this case is the fraud count.

1

the Magistrate Judge recommends granting Defendant's motion for summary judgment (Dkt. 47), and denying as moot Plaintiff's motion for leave to file a summary judgment motion (Dkt. 58) and her proposed summary judgment motion (Dkt. 57), which Plaintiff filed without leave of Court.   Plaintiff filed objections to the R&R (Dkt. 63), to which Defendant filed a response (Dkt. 64).   Plaintiff, after seeking and receiving leave, filed a sur-reply (Dkt. 68).   The Court reviews de novo any portion of the R&R to which a specific objection has been made.   Fed. R. Civ. P. 72(b).

The factual background and legal standards governing this case have been sufficiently set forth by the Magistrate Judge in his R&R, and need not be repeated in full here.   Plaintiff is the owner of a rental property located at 14818 Washburn Street, Detroit, Michigan; Defendant held a mortgage upon the property securing a loan.   Mortgage (Dkt. 47-5).   After the rental property sustained fire damage, Plaintiff's insurance company issued a check to her and to Defendant jointly.   Knight Dep. at 19-20, 26 (Dkt. 47-3); Northfield Insurance Co. Check (Dkt. 24 at 39 of 78).   Plaintiff claims that Defendant's agents made fraudulent misrepresentations to her, leading her to sign a document authorizing the use of the insurance proceeds to pay off the balance of her mortgage loan.   Am. Compl. at 10-14 (Dkt. 24).   Plaintiff asserts that she wanted to use the insurance proceeds to repair the property, not to pay off her loan.   Id.

For the reasons that follow, the Court concludes that, although there is a genuine issue of fact as to whether Defendant's agents made the claimed oral misrepresentations to Plaintiff, there is no genuine issue of fact that Plaintiff's reliance on the asserted misrepresentations was not reasonable.   Because Plaintiff cannot demonstrate reasonable reliance, Defendant is entitled to summary judgment on the fraud claim.   Accordingly, the Court will accept the recommendation contained in the R&R, overrule Plaintiff's objections (Dkt. 63), grant Defendant's motion for

2

summary judgment (Dkt. 47), and deny as moot Plaintiff's motion for leave to file a motion for summary judgment (Dkt. 58) and proposed motion for summary judgment (Dkt. 57).[2]

## II.    ANALYSIS

Plaintiff raises four objections to the R&R.  She asserts (i) that she has sufficiently demonstrated the elements of fraud in the inducement; (ii) that she has shown that her intent was to use the insurance proceeds to pay for repairs; (iii) that Defendant has destroyed or concealed evidence; and (iv) that many lawsuits asserting fraud claims have been filed against Defendant. The Court addresses each objection in turn.

### A.    Objections Regarding Fraud Claim

#### 1.    Arguments

Regarding the fraud claim, the R&R concludes that the record demonstrates that the fax Defendant sent to Plaintiff, which contained the document she signed authorizing the use of insurance proceeds to pay off her loan, was sent in the correct order, so the order of pages in the fax cannot be the basis for a fraud claim.  R&R at 13.  The R&R further concludes that there is a genuine issue of fact as to whether Plaintiff was directed to sign the last signature page of the fax to begin receiving repairs.  Id. at 14-15.  The R&R concludes, however, that Plaintiff's reliance on the claimed misrepresentations was unreasonable as a matter of law, because the documents she received in the fax allowed her to test the veracity of the oral statements.  Id. at 15-16.

Plaintiff objects to the R&R's analysis of her fraud-in-the-inducement claim.  She contends that the fax was sent to her with the pages out of order and was "convoluted and confusing."  Pl. Obj. at 2-3.  Plaintiff argues that she has demonstrated the elements of fraud in the inducement: (i) Defendant made certain material misrepresentations by telling Plaintiff she

---

[2] As explained further infra, however, the Court will grant in part and deny in part Defendant's request for costs and attorney fees.

was required to pay off the loan and advising Plaintiff to sign the last, blank signature page of the fax it had sent her; (ii) the representations were false because it did not allow Plaintiff to use the insurance proceeds as she desired, which was to bring her mortgage payment current and use the balance on repairs for the property; (iii) Defendant knew or should have known the representations were false, because she made her intentions clear to Defendant's agents; (iv) Defendant made the representations with the intent Plaintiff would act on them; and (v) Plaintiff relied on Defendant's representations and, as a result, had to spend over $40,000 of her own money to pay for repairs. Id. at 5-6; Pl. Sur-reply at 1, 2 (Dkt. 68). Plaintiff further argues that the faxed documents were facially confusing because (i) there was no signature page attached to the contractor's checklists and (ii) the plain language of the payoff letter required her to send in both pages of the letter, not just the signature page, to authorize use of her insurance proceeds to pay off the loan. Pl. Sur-reply at 2-3.

Defendant responds that Plaintiff has not established a prima facie case of fraud. Def. Resp. at 15 (Dkt. 64). Defendant argues that the two claimed misrepresentations — that Defendant sent Plaintiff a fax with pages that were out of order to confuse her, and that Defendant orally told her to sign the wrong document to trick her into paying off the loan — are not supported by the record. Id. at 15-17, 23. Defendant further argues that Plaintiff cannot show reasonable reliance, because the plain language of the document she signed contradicted the claimed oral misrepresentation. Id. at 18-20.

## 2.    Discussion

"Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." Samuel D. Begola Servs., Inc. v. Wild Bros., 534 N.W.2d 217, 219 (Mich. Ct.

App. 1994) (citations omitted).  To prove fraud in the inducement, Plaintiff must establish:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.

Hi-Way Motor Co. v. Int'l Harvester Co., 247 N.W.2d 813, 816 (Mich. 1976) (citations and quotation marks omitted); see also Kheder Homes at Charleston Park, Inc. v. Charleston Park Singh, LLC, No. 307207, 2014 WL 60326, at **2-3 (Mich. Ct. App. Jan. 2, 2014) (applying the Hi-Way elements to a claim of fraud in the inducement).  Furthermore, it is not enough for Plaintiff to show that she relied on Defendant's misrepresentations, but she must also demonstrate that such reliance was reasonable.  Novak v. Nationwide Mut. Ins. Co., 599 N.W.2d 546, 553-554 (Mich. Ct. App. 1999); Johnson v. Johnson, No. 307572, 2013 WL 2319473, at *2 (Mich. Ct. App. May 28, 2013).

Having carefully reviewed the R&R and the parties' arguments, the Court agrees with the R&R that, although there is a genuine issue of fact as to whether Defendant's agents made the claimed oral representations to Plaintiff, there is no issue of fact that Plaintiff's reliance on the claimed representations was not reasonable.  Therefore, Plaintiff cannot prevail on her fraud claim.

### a. The record demonstrates that the fax was sent with its pages in the correct order.

Plaintiff maintains that Defendant sent the fax to her with the fax's pages deliberately out of order.  However, the record contradicts Plaintiff's contention.  Defendant submitted a copy of the fax, with the fax transmittal line printed across the bottom (Dkt. 47-2).  The fax transmittal

line indicates that the fax was sent on November 22, 2010.  The fax contains various documents

relating to Plaintiff's options for applying the insurance proceeds:

- The first page of the fax (LD715/BO6/1, marked page 002/012 on the fax transmittal line) is a letter to Plaintiff from the Property Loss Department.[3]  It states in part, "Thank you for the recent notification concerning the damage to your property.  We . . . would like to take this opportunity to explain the disposition of funds and the procedures utilized to complete the repairs. . . . The following pages will provide the instructions and forms that we need signed and returned to us along with the check containing all necessary endorsements. . . . If your insurance check exceeds your current outstanding balance, you have the option to pay off the loan."  Id.  The second page of the fax (LD715/BO6/2/OS1, marked 003/012) lists the "enclosed forms" required to process a claim for repairs.  Id.

- The third page (LD716/BO6/1, marked 004/012) lists the documents that Plaintiff must complete and submit to receive each of three releases of funds for repairs.  Id.

- The fourth page (LD716/BO6/2/OS1, marked 005/012) is titled "Conditional Waiver of Lien."  Id.  It is signed by Plaintiff and by the contractor B.H.I. Group.  Id.

- The fifth page (LD717/BO6/1, marked 006/012) is titled "Certification of Completion of Repairs."  Id.  It is not signed.

- The sixth page (LD717/BO6/2/OS1, marked 007/012) is titled "General Information Form."  Id.  The form is completed, and lists items such as the date of loss, type of loss, and the name and address of the contractor to perform the repairs.  Id.

- The seventh page (LD718/BO6, marked 008/012) is marked "For Contractor Use Only," and is filled out by Benjamin Hawkins, who indicated that he owned the B.H.I. Group.  Id.

- The eighth page (LD423/BO6/1, marked 009/012) is a letter to Plaintiff.  Id.  It provides in part, "Wells Fargo Home Mortgage has been advised that you wish to payoff the loan for the above-referenced property with the settlement check(s) from the insurance proceeds.  By signing the attached, you acknowledge and consent to the following: (1) You authorize Wells Fargo Home Mortgage to negotiate the endorsed settlement check(s), which you will submit with this executed attachment. . . . (3) There is no cancellation or retraction of the authorization to payoff the loan from the insurance proceeds at a subsequent date. . . . Please send the endorsed settlement check(s) and this executed letter to the following address . . . ."  Id.

---

[3] The Court notes that page 001 of the fax was apparently the fax cover page.  The R&R states that the first page of the fax was the cover page, R&R at 5, and no party specifically disputes this.  Although Plaintiff maintains that the fax was confusing and out of order, she does not dispute that page 001 of the fax was the cover page.

- The ninth page (LD423/BO6/2/OS1, marked 010/012), states, "I/We, the above-listed borrower(s), acknowledge and agree to comply with all the terms as listed in this notice." Id.  It contains spaces for the borrower signature and date, and it is signed by Plaintiff and dated January 11, 2011.  Id.

- The tenth and eleventh pages of the fax (LD424/BO6/1, marked 011/012; and LD424/BO6/2/OS1, marked 012/012) are a letter directing Plaintiff to elect an option for use of the insurance proceeds: (i) bring her mortgage account current; (ii) select a contractor to complete the repairs; or (iii) use personal funds to make the repairs and apply the insurance claim funds to the monthly mortgage payments.  Id.  The letter states that the claim package and required documents are enclosed.  Id.

The fax transmittal line and the copy of the fax establish that the pages of the fax were sent to Plaintiff in the above-established order, containing documents and instructions pertaining to two options for application of the insurance funds: (i) applying the funds to repairs of the property or (ii) using the funds to pay off the mortgage loan.  Plaintiff's assertions that the pages of the fax were sent out of order to confuse her are contradicted by the clear record evidence.[4]

Accordingly, there is no genuine issue of fact that the pages of the fax were sent in the order described above, and to the extent Plaintiff's claim of fraud is premised on the assertion that the pages of the fax were sent out of order, such claim lacks merit.  See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").[5]  Because

---

[4] The Court notes, as well, that the Magistrate Judge states in the R&R that, "at the hearing on the instant motion Knight admitted that her allegations about an incomplete and/or out-of-order Fax lack merit."  R&R at 5 n.4.

[5] In her objections, Plaintiff argues that if "Wells Fargo **did** send a fax with the pages in order, they should have been able to readily produce it to this court as part of their briefing. . . .  At plaintiff's deposition, defendant's attorney presented her with a complete copy of the 12-page faxed document in its final form.  However, this is not how she remember [sic] receiving the faxed documents."  Pl. Obj. at 3 (emphasis in original).  The Court rejects these arguments.  Although Defendant did not submit a copy of the fax in the briefing on the motion to dismiss, Defendant did submit a copy of the fax as an exhibit to the instant motion for summary

the documentary record evidence establishes that the fax was sent in the above-described order, the Court rejects Plaintiff's objections as to the order of the pages in the fax.

> **b.     There is a genuine issue of fact as to whether Defendant's agents made the claimed oral representations to Plaintiff.**

Plaintiff next argues that Defendant's agents made oral misrepresentations to her by directing her to sign the last signature page of the fax to begin applying the insurance proceeds toward repairs, because Defendant knew that the signature page would, instead, authorize Defendant to use the insurance funds to pay off the loan.  Plaintiff asserts that on November 22, 2010 — the day that the fax was sent to her — she engaged in numerous telephone conversations with Defendant's agents regarding her desire to repair the property.  Pl. Obj. at 3.  She contends that Defendant has produced a recording of only one of these conversations.  Id. at 3-4.

---

judgment.  Moreover, under Scott, 550 U.S. at 380, Plaintiff's claimed recollection of how the fax appeared, which is contradicted by the documentary record evidence, is insufficient to create a genuine issue of fact.

Further, in her sur-reply brief, Plaintiff contends as follows:

> Plaintiff has continuously argued that the fax was out of order because the ***"Written Authorization"*** signature line was used by Wells Fargo as the Pay-off signature line.  Specifically, because there was no designated line to provided [sic] ***"Written Authorization"*** within the fax, Plaintiff and her Contractor called Wells Fargo and followed the instruction of Wells Fargo by signing the "Last Signature Page", in order to provide Wells Fargo with "written authorization to work any and all third parties during the claim process".  The "last signature page" was not connected to the contractor's checklist.   This is why plaintiff claims that the fax was sent in "no particular order".

Pl. Sur-reply at 2 (Dkt. 68) (emphasis in original).  From this argument, it appears that Plaintiff is no longer asserting that the copy of the fax, attached as Defendant's Exhibit 1, is an inaccurate reproduction of the fax.  Rather, she seems to be saying that the oral representations made to her by Defendant's agents did not accurately reflect the contents of the fax.  The Court will address Plaintiff's arguments as to the claimed oral misrepresentations infra.  Regardless, as explained above, the Court concludes that the record evidence demonstrates that the fax was sent with the pages in the above-specified order.

The recording to which Plaintiff refers is an audio recording of a telephone conversation between herself and an individual named Elaine, a representative of Defendant (Ex. 5, submitted as audio disc).   During this conversation, Plaintiff and Elaine discussed options for using the insurance proceeds to either pay off the loan or repair the property.   Elaine informed Plaintiff that she was behind on her mortgage payments; Plaintiff expressed uncertainty as to how she wanted to proceed, and she inquired as to the possibility of a loan modification.   Elaine explained that Defendant was not inclined to assist Plaintiff in reducing the amount owed on the loan.   In addition, after initially mentioning the possibility of doing a short sale, Elaine told Plaintiff that a short sale would not be an option after all.   The recording ends when Elaine transferred Plaintiff to another representative.  Id.

In her affidavit, Plaintiff asserts that she and her contractor only followed the instructions of Defendant's representatives in filling out the forms included in the fax.  Pl. Aff. ¶ 5 (Dkt. 63). She asserts that after following the instructions, she and her contractor mailed "forms LD423/B[O]6/2/[O]S1, LD716/B[O]6/1, and LD715/B[O]6/2/OS1, along with the contractors' information, and other documents requested in letter LD716."  Id. ¶ 6.  The contractor retained by Plaintiff to perform the repairs, Benjamin Hawkins, also stated that "it was plaintiff's and [his] understanding, based on the telephone conversations with Wells Fargo on November 22, 2010, that plaintiff needed to sign the ***last page of the faxed documents*** in order to pay for the repairs to her property."[6]  Hawkins Aff. ¶ 8 (Dkt. 63) (emphasis in original).[7]

---

[6] As the Magistrate Judge noted in his R&R — and as no party disputes — the parol evidence rule generally bars the introduction of statements made outside a written contract to vary the terms of that contract, but the parol evidence rule does not preclude the introduction of extrinsic evidence of fraud.  See NAG Enter., Inc. v. All State Indus., Inc., 285 N.W.2d 770, 771-772 (Mich. 1979).  Because Plaintiff seeks to introduce the claimed oral statements to demonstrate her allegations of fraud, the statements are not barred by the parol evidence rule.

As an exhibit to its response to Plaintiff's objections, Defendant submits call process notes regarding calls Plaintiff made to Defendant on November 22, 2010 and December 1, 2010 (Dkt. 64-1).[8]   The notes indicate that on November 22, Plaintiff was unsure of whether she wanted to proceed with the loan payoff option or the repair option, and requested that both the claims package and the payoff documents be faxed to her.  Id.  On December 1, Plaintiff called to "discuss option of payoff."  Id.[9]

The Court concludes that there is a genuine issue of fact as to whether Defendant made the claimed oral misrepresentations to Plaintiff.  Although Defendant submitted a recording of a conversation in which Defendant's representative, Elaine, did not instruct Plaintiff to sign any pages of the fax, there is evidence in the record that this conversation was only one of several between Plaintiff and Defendant's representatives.  Plaintiff and her contractor have stated, in affidavits, that Plaintiff signed and mailed the loan payoff signature page, LD423/BO6/2/OS1, because Defendant's representative directed her to do so to begin applying the insurance funds to

---

[7] Hawkins' affidavit was signed and notarized on March 26, 2014, after the R&R was entered on the docket.  In reviewing a summary judgment motion on which a Magistrate Judge has rendered an R&R, "[t]he Court may supplement the record by entertaining additional evidence, but is not required to do so."  United States v. White, 295 F. Supp. 2d 709, 712 (E.D. Mich. 2002).

[8] The Court notes that, although the call process notes may raise possible hearsay issues, no party has objected to the Court's consideration of the notes.  Accordingly, any such objection is deemed waived.  See Wiley v. United States, 20 F.3d 222, 226 (6th Cir. 1994) ("[H]earsay evidence cannot be considered on a motion for summary judgment. . . . [But if] a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived . . . ." (citations omitted)).

[9] Plaintiff also submitted, as an attachment to her objections, a picture of a compact disc labeled "case # 12-cv-12129, exhibit #4."  (Dkt. 63 at 21 of 21).  The actual CD was not submitted to the Court.  Plaintiff references this CD to support her assertion that "Plaintiff continuously called Wells Fargo for months seeking all options concerning the property."  Pl. Obj. at 3.  However, as explained below, the Court concludes, without reference to this asserted CD, that there is a genuine issue of fact as to whether Defendant made the claimed oral misrepresentations to Plaintiff.

the cost of repairs.  At this stage, there remains a genuine issue of material fact as to whether such representations were made.  Accordingly, the Court sustains Plaintiff's objections as to the existence of the oral misrepresentations.

> **c.    Plaintiff's reliance on the claimed oral misrepresentations was not reasonable.**

To prevail on her fraud claim, Plaintiff must demonstrate that she reasonably relied on the claimed misrepresentations.  See Novak v. Nationwide Mut. Ins. Co., 599 N.W.2d 546, 554 (Mich. Ct. App. 1999); see also Johnson v. Johnson, No. 307572, 2013 WL 2319473, at *2 (Mich. Ct. App. May 28, 2013) (noting that reasonable reliance is a required element of a claim of fraudulent inducement).  "[T]here can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant."  Webb v. First of Mich. Corp., 491 N.W.2d 851, 853 (Mich. Ct. App. 1992) (citations omitted).  "Unreasonable reliance includes relying on an alleged misrepresentation that is expressly contradicted in a written contract that the plaintiff reviewed and signed."  Aron Alan, LLC v. Tanfran, Inc., 240 F. App'x 678, 682 (6th Cir. 2007) (citing Novak, 599 N.W.2d at 554).

Here, the faxed loan payoff documents sent to Plaintiff expressly state:

> Wells Fargo Home Mortgage has been advised that you wish to payoff the loan for the above-referenced property with the settlement check(s) from the insurance proceeds.  By signing the attached, you acknowledge and consent to the following . . . You authorize Wells Fargo Home Mortgage to negotiate the endorsed settlement check(s) . . . . There is no cancellation or retraction of the authorization to payoff the loan from the insurance proceeds at a subsequent date.

Fax at 9 of 12 (Dkt. 47-2).  As the Court determined above, there is no genuine issue of fact that the fax was sent in the correct order, i.e., with the loan payoff signature page immediately following the loan payoff letter.  Therefore, there was no ambiguity in the plain language of the

documents that by signing the attachment (LD423/BO6/2/OS1), Plaintiff was authorizing Defendant to use the insurance proceeds to pay off the mortgage loan. Because the plain language of the written document expressly contradicted the claimed oral misrepresentation, Plaintiff's reliance on the oral statement was not reasonable.[10]

In her sur-reply, Plaintiff argues, "[t]his court must determine that Plaintiff did not disregard the plain language of the fax. Page 9 clearly specified that Page 9 should accompany the check, if Plaintiff choose [sic] to pay off the mortgage. Plaintiff did not accompany page 9 and 10 together with the check." Pl. Sur-reply at 3. In the R&R, the Magistrate Judge rejected Plaintiff's "argument that her signed LD 423 Signature Page was not effective because she returned only that page, and not the entire two-page LD 423 document. The Fax makes clear that the operative document for her to elect to pay off her Loan was the LD 423 Signature Page."

---

[10] Plaintiff's argument that she "should not have had to test the veracity of Wells Fargo's representations as she was looking to them for advice and guidance," Pl. Obj. at 4, is unsupported and contrary to Michigan law. Under Michigan precedent, the mere fact that Plaintiff, a consumer, was looking to an arguably more knowledgeable employee of a business entity for guidance as to her transaction is insufficient to override the general principle that "there can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant." Webb, 491 N.W.2d at 853. In Webb, for example, the plaintiffs invested $40,000 in a limited partnership "on the advice of . . . a broker at defendant . . . that [the investment] was risk-free and would yield at least eighteen percent interest." Id. at 852. The court noted that "the front page of the prospectus states that the investment involves special risks and that the reader should consult the risk factors section. . . . Even a cursory review of any of these documents would have enlightened plaintiffs that the investment was not 'risk free' as represented by the broker." Id. at 854. As in Webb, Plaintiff in this case had the means of verifying the truthfulness of the claimed misrepresentations, and Defendant did not prohibit her from reading or reviewing the faxed pages in any way. Accordingly, regardless of the assertion that Plaintiff was looking to Defendant for advice and guidance, Plaintiff's reliance on the claimed misrepresentations was not reasonable.

The Court notes that Plaintiff also objects to the R&R's reliance on Webb. Plaintiff contends that the facts in Webb are distinguishable from the facts in the instant case. Pl. Obj. at 4. However, as explained above, the analysis of Webb is applicable regardless of the fact that the transaction at issue in Webb was different from the transaction at issue in the instant case.

R&R at 16 n.9.  It is true that the loan payoff document directs Plaintiff to send "the endorsed settlement check(s) <u>and this executed letter</u>." (emphasis added).  Fax at 9 of 12.  However, the Court agrees with the R&R that the document unambiguously provides that, "[b]y signing <u>the attached [signature page]</u>, you . . . authorize Wells Fargo Home Mortgage to negotiate the endorsed settlement check(s)." (emphasis added).  <u>Id.</u>  Therefore, there is no ambiguity that by signing the LD423 form, Plaintiff was authorizing Defendant to pay off the loan.[11]

Further, Plaintiff's assertion that the fax is facially unclear because there was no "signature page" for the repair authorization lacks merit.  Form LD716/BO6/2/OS1, titled "Conditional Waiver of Lien," which is part of the repair documentation package, contains a signature block for Plaintiff.  Moreover, regardless of whether the "Conditional Waiver of Lien" page clearly fits the description of a signed authorization page, it is apparent, as explained above, that the LD423 form authorized Defendant to use the insurance proceeds to pay off the loan.  Thus, Plaintiff's reliance on the oral statement was not reasonable.

For these reasons, the Court concludes that Plaintiff cannot demonstrate that she reasonably relied on the claimed oral misrepresentations, and the Court rejects Plaintiff's objections as to the reasonable reliance element.[12]  Accordingly, Plaintiff is unable to prevail on

---

[11] Plaintiff also argues that, "if the plain language is observed, it is clear that plaintiff did not submit forms 9 and 10, thus depriving Wells Fargo from use of the insurance proceeds to pay-off the mortgage."  Pl. Sur-reply at 3.  Plaintiff further seems to contend that the payoff letter was invalid because it did not specify an expiration date.  <u>Id.</u> at 2.  To the extent Plaintiff attempts to reassert her breach-of-contract claim by arguing that Defendant took an impermissible action under the contract terms, the Court notes that Plaintiff's breach-of-contract claim has been dismissed, and the Court need not address her arguments at this time.

[12] Because the Court concludes that Defendant is entitled to summary judgment on the fraud claim on the ground that Plaintiff is unable to show reasonable reliance, the Court need not reach the parties' arguments as to damages.

her fraud claim.  See Novak, 599 N.W.2d at 554.[13]

**B.      Objections Regarding Plaintiff's Intent**

Plaintiff argues that the record evidence clearly demonstrates that her intent was not to

pay off her mortgage, but rather to use the insurance proceeds toward repairs to the property; she

further maintains that she made her intent clear to Defendant's representatives.  She contends

that the Magistrate Judge erred in not referencing an unsigned form, which Plaintiff argues

demonstrated her intent not to pay off the loan.[14]  Pl. Obj. at 1, 7.  Plaintiff further asserts that

she made numerous calls to Defendant regarding her intent to use the repairs to pay off the loan.

Id. at 2, 3-4.  Plaintiff maintains that her failure to submit both pages 9 and 10 of the fax — the

letter and the attachment — demonstrated her intent not to pay off the loan.  Pl. Sur-reply at 2-

3.[15]  In response, Defendant contends that the Magistrate Judge properly declined to consider the

---

[13] In her objections, Plaintiff argues that she made "several payments to Wells Fargo which were to be applied to future payments."  Pl. Obj. at 2.  As an initial matter, this argument is unsupported by the record.  The account statement submitted by Plaintiff in support of this argument, which lists monthly payments ending in February 2010, does not indicate that any payments were to be "applied to future payments."  See Ex. C (Dkt. 63 at 18 of 21).  Further, it is not apparent how Plaintiff's argument regarding her payments, which would appear to go to the issue of whether she was in default on her mortgage loan, is material to her claim of fraud.  As the Magistrate Judge noted, Plaintiff's "payment status is generally irrelevant to whether or not she has sufficiently pleaded and supported a case that Wells Fargo committed fraud here."  R&R at 2 n.1.

[14] Plaintiff asserts that Defendant sent her the loan payoff signature page twice, and that she did not sign the second signature page.  She argues that this was "a clear indication that she did not want to pay off the mortgage."  Pl. Obj. at 1.  The alleged unsigned form has not been provided to the Court by either party.

[15] Plaintiff maintains, as well, that Defendant was aware that Plaintiff did not intend to use the insurance proceeds to pay off the loan.  Pl. Obj. at 2-3; Pl. Sur-Reply at 2-3.  In support of this argument, Plaintiff relies on an exhibit that she attached to her motion for leave to file a sur-reply; the exhibit was not attached to her actual sur-reply brief.  See Dkt. 66 at 9-14.  The exhibit appears to be an email chain between Pamela Campbell, a property loss claims manager at Assurant, an insurance corporation, and Nathan Garvey, whose email address indicates that he is with Wells Fargo.  Campbell wrote that Plaintiff "asked for both the claim package and the payoff letter.  She then proceeded to fill out and sign both."  Id. at 11 of 14.  Campbell stated,

14

alleged unsigned form that Plaintiff presented at oral argument, and the various telephone calls that were not relevant to her claim.  Def. Resp. at 22-23.

In a footnote to the R&R, the Magistrate Judge noted,

> The Court recognizes that the documents Knight ultimately returned to Wells Fargo with the LD423 Signature Page – information related to repairing the Property – make a compelling case that she subjectively intended to use the insurance proceeds to repair the Property, not pay off her Loan.  While Wells Fargo's decision to accept Knight's signed LD423 Signature Page as proof of her intent to pay off her Loan may have been opportunistic and not the customer service one would expect, it does not render any of Wells Fargo's alleged prior statements fraudulent.

R&R at 17 n.10.  The Court agrees with the Magistrate Judge.

Plaintiff has presented persuasive evidence of her subjective intent to use the insurance proceeds to repair the property.  In her deposition testimony, she maintains that her desire was to repair the property, not to pay off the loan.  See Knight Dep. at 39.  Further, she hired a contractor, and she and the contractor both filled out and submitted the repair documentation that was faxed to her.  However, whether Plaintiff subjectively desired to repair the property — and whether she communicated this desire to Defendant — are simply not material to the issue of whether Plaintiff reasonably relied on any claimed oral misrepresentations.  Nor was it erroneous

---

"Due to the status of the claim prior to the payoff and the notes on the system, we need to know what the expectation of Wells Fargo is."  Id.  After several emails back and forth, Garvey replied, "[t]he letter she signed states that there will be no retraction of the authorization to pay the loan in full.  We will not reverse the payment.  Go ahead and send her the 22k remaining in r/e."  Id. at 14.

Taken in the light most favorable to Plaintiff, the emails indicate that Defendant was aware, after Plaintiff submitted the payoff authorization, that Plaintiff did not in fact wish to pay off the loan; Defendant proceeded with the loan payoff on the ground that the payoff could not be retracted.  However, the emails are immaterial to the question of whether Defendant made oral misrepresentations regarding the payoff documents, on which Plaintiff reasonably relied.  Thus, the emails — and Plaintiff's argument that Defendant was aware of Plaintiff's intent — do not support a fraud claim.  Although Plaintiff's argument may support other claims, any such claims are not set forth in any current pleading.

for the Magistrate Judge to decline to reference the alleged unsigned document; the Magistrate Judge concluded, and the Court agrees, that Plaintiff's subjective intent is not relevant to the analysis at issue.   For these reasons, the Court rejects Plaintiff's objections regarding her subjective intent.

## C.    Objections Regarding Spoliation

Plaintiff argues that Defendant has failed to provide all of the recordings of her telephone calls with Defendant.  Pl. Obj. at 4.  She contends that pursuant to the doctrine of spoliation of evidence, she will "request the trier of fact" to draw a negative inference against Defendant "in the event this matter proceeds to trial."  Id.  In response, Defendant argues that the spoliation claim is misplaced and unfounded.  Def. Resp. at 24-25.

"Spoliation of evidence occurs when a party either deliberately or accidentally destroys or loses crucial evidence, or when a party fails to preserve such evidence when it is under a duty to preserve evidence that it knows or reasonably should know is relevant to the action."  Dokho v. Jablonowski, No. 306082, 2012 WL 5853754, at *3 (Mich. Ct. App. Nov. 15, 2012).  "An appropriate consequence for a party's failure to preserve evidence may be an instruction to the jury that it may draw an inference adverse to the culpable party from the absence of the evidence."  Id. (citations and quotation marks omitted).

The Court need not address whether Plaintiff's spoliation claim is meritorious, because the claim is moot.  Regarding spoliation, Plaintiff seeks only an adverse jury inference "in the event the matter proceeds to trial."  Because the Court is granting summary judgment in favor of Defendant and dismissing the case, it need not reach whether Plaintiff would be entitled to an adverse inference.  Therefore, the Court rejects Plaintiff's objections as to spoliation.

## D.    Objections Regarding Defendant's Litigation History

16

Plaintiff cites multiple cases in which, she asserts, claims of fraudulent practices and misleading statements were made against Defendant.  Pl. Obj. at 6-7.  Plaintiff maintains that she is "another victim of Wells Fargo's long-standing history of misrepresentations and fraudulent behavior."  Id. at 7.  The Court rejects this objection.  First, this is a new argument raised for the first time in the objections to the R&R.  "It is well established that a party may not raise an argument, advance a theory, or marshal evidence before a District Judge that was not fairly presented to the Magistrate Judge."  Marr v. Foy, No. 1:07–CV–908, 2010 WL 3061297, at *4 (W.D. Mich. Aug. 3, 2010) (citing Murr v. United States, 200 F.3d 895, 902 n.1 (6th Cir. 2000)).  "'The Magistrates Act was not intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court.'"  Id. (quoting Jones–Bey v. Caruso, No. 1:07–CV–392, 2009 WL 3644801, at *1 (W.D. Mich. Oct. 30, 2009)).  For this reason, the Court can properly deem this argument waived.  Second, even if the Court were to consider the argument, Defendant's litigation history is not material to the issue before the Court, i.e., whether Defendant is entitled to summary judgment on Plaintiff's fraud claim.[16]

### III.    CONCLUSION

For the reasons stated above, the Court grants Defendant's motion for summary judgment (Dkt. 47).[17]  The Court, therefore, denies as moot Plaintiff's motion for leave to file a motion for

---

[16] Plaintiff also quotes, without citation, an advertisement that she claims was authored by Defendant's CEO.  Pl. Obj. at 4-5.  Plaintiff contends that, because of assertions made in the advertisement, she relied on the guidance of Defendant's representatives.  Id. at 5.  However, the issue of the alleged advertisement is not relevant to whether Plaintiff reasonably relied on oral statements that were contradicted by the plain language of a written contract.  Further, Plaintiff has neither provided a citation for the advertisement nor attached a copy of the advertisement.  For these reasons, the Court rejects Plaintiff's objections regarding the advertisement.

[17] Defendant asks for costs and fees.  Because Defendant is the prevailing party, it is entitled to costs, as a matter of course.  See Federal Rule of Civil Procedure 54(d) ("Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."); see also Lewis v. Pennington, 400 F.2d 806, 819 (6th Cir.

summary judgment (Dkt. 58) and motion for summary judgment (Dkt. 57).[18]   The case is dismissed with prejudice.

      SO ORDERED.


                                s/Mark A. Goldsmith
Dated: September 29, 2014         MARK A. GOLDSMITH
     Detroit, Michigan         UNITED STATES DISTRICT JUDGE

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 29, 2014.

                                s/Johnetta M. Curry-Williams
                                JOHNETTA M. CURRY-WILLIAMS
                                CASE MANAGER

---

1968) (holding that the "prevailing party is prima facie entitled to costs and it is incumbent upon the unsuccessful party to show circumstances sufficient to overcome the presumption."). As for fees, courts have generally held that a request for fees must be made in a separate motion. E.g., Vick v. Metropolitan Life Ins. Co., 417 F. Supp. 2d 868, 883, n.12 (E.D. Mich. 2006) ("The court, however, denies without prejudice Plaintiff's one-sentence request for attorney's fees, contained in the last paragraphs of Plaintiff's motion and response briefs, inasmuch as it is unsupported by separate motion and brief."). Because Defendant has not filed a separate motion, the Court is justified in denying the request. Even if the Court were to ignore that defect, the Court would deny the request. Defendant states in conclusory fashion that the opposing party's position is frivolous. Courts will reject arguments that are made without support or analysis. McGuire v. Warner, No. 05-40185, 2009 WL 4403383, at *17 (E.D. Mich. Nov. 25, 2009) (denying, without prejudice, a request for attorney fees where the moving parties "provided no authority in support of their request"). See also McPherson v. Kelsey, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citations and internal quotation marks omitted)). The Court denies the attorney fee request without prejudice.

[18] The Court also notes that the dispositive motion deadline expired on November 26, 2013, and Plaintiff's motion for leave to file a summary judgment motion was not entered until January 22, 2014. Further, Plaintiff's claim that Defendant committed a "fraud on the court" by fabricating evidence, raised for the first time in her proposed summary judgment brief, is unsupported by any record evidence.